# EXHIBIT Y

# Sworn Statement of Events

Brittany E Baker
[redacted]

Mailing Address
[redacted]

May 22, 2025

For:

Horizon Federal Credit Union
330 Pine St
Suite 400
Williamsport, PA 17701

Complaint Related To: Justin Howard; CEO

Total Potential Impact- Exceeds 4,800

** Ongoing Felony, Dual Consent for Recording Pennsylvania Wiretap Act, 18 Pa. C.S. § 5701 **

1- Call Recording Procedure starting August 23, 2023 and continuing through current day i.e. May 22nd, 2025 based on circumstantial, observed, and experienced information that can be elaborated on and substantiated in part or whole by:

   a. Michael Burns- Chief Financial and Information Officer
   b. Eric Ditillio- Director of IT and Facilities
   c. Elizabeth Fink- Member Engagement Manager
   d. Kristina Rotoli- Operational Support Manager
   e. Katelyn Smith- Former Employee
   f. Lori Boob- Former Employee

   Call recording for Member Engagement Call Center and the Lock Haven branch with the failure to obtain dual consent for call recording as required by Pennsylvania Wiretapping Laws, a 3rd Degree Felony with 2 year Statute of Limitations.

   - August 23rd 2023- Leadership Meeting as evidenced in minutes held a discussion about the Ring Central Call Recording feature
     - Denise Lariviere requested to turn on for the call center with the conversion of call center software use kickoff slated for November 2023.
     - Justin Howard approved this feature to be activated
     - Michael Burns, Katelyn Smith, and Brittany Baker raising concerns about the lack of training, policy, procedure, and processes to ensure compliance with disclosing the calls being recorded.
     - Denise confirmed that the incoming calls would have either an alert that the call may be recorded or the periodic beeping to meet the requirements of the law, procedures would be written, and training completed.
     - Michael Burns stated he would not turn on call recording until he received confirmation from Justin and Denise that the training had been completed
   - November 6, 2023- Member Engagement Department officially split from Operational Support
   - November 27, 2023- Call Center Software and recording became available to record calls, Michael Burns turned on call recording after verbal confirmation from Justin and Denise that training and features were complete.
   - April 24th 2024- Leadership Meeting as evidenced in minutes held a discussion about turning on call recording for the branch network
     - Denise Lariviere requested call recording for the branch network
     - Michael Burns stated that policy and procedure needed written first

  - Justin Howard stated that Denise was responsible for writing the necessary policy and procedure and will revisit recording once completed
  - Brittany Baker raised concern about needing policy and procedure for audits
- January 28th 2025- Brittany Baker emailed Justin Howard regarding PCI Compliance Audit she was completing and concerns about illegal activities
- February 4th, 2025- Senior Management Meeting with attendees: Michael Burns, Justin Howard, Denise Lariviere, Brittany Baker, and Michael Patterson which discussed Brittany's concern and illegal activities:
  - Brittany stated that during her PCI compliance with our merchant services provider they inquired related to masking credit card numbers received which was not currently happening and is a violation of potentially several regulations and laws as a data security risk.
  - Brittany stated that she was unable to locate the policy and procedures to be written for call recording to confirm processes for the audit.
  - Brittany stated she asked Michael Burns about the policy and procedure and Michael stated none were ever written.
  - Michael Burns stated policy and procedure were not written but could generate some as examples to get implemented asap.
  - Denise requested call recording to be turned on for Lock Haven to be used for coaching
  - Justin approved the call recording turned on
  - Michael stated not until he received confirmation that dual consent training was completed
  - Denise stated they had been trained for several months
  - Brittany inquired who was monitoring for compliance of that as it is a pretty big risk and against the law if it is not being adhered to
  - Justin and Denise stated it was being properly monitored
- February 27th, 2025- Michael Burns received verbal confirmations from Justin and Denise that training for Lock Haven had been completed and was instructed to turn on call recording and was told to turn on recording as requested and authorized by Justin Howard.
- April 22nd, 2025- Brittany Baker speaking to Michael Burns around 8:30am:
  - Brittany inquired about the policy and procedure for call recording as it was still a needed item for PCI Compliance
  - Michael Burns stated that the policy and procedure he created to include state and federal laws was given to Justin Howard.
  - Michael Burns stated that Justin declined to use these policy and procedure templates and to remove the state and federal law verbiage from them.
  - Brittany inquired about how do we know that training, compliance, disclosures are being legally and compliantly followed.
  - Brittany stated that not following these laws and regulations could be extremely detrimental to the organization and members
  - Michael stated that Justin was to be monitoring call compliance since Denise went out on leave effective March 17th, 2025
  - Michael stated that he needed a valid reason to review a call for compliance as it was Justin monitoring
  - Brittany stated she did have an outbound call to a member she needed information on related to a loan modification complaint and would provide him the information
- April 22nd, 2025- Brittany Baker provided Michael Burns the member phone number for call review
- April 22nd, 2025- Michael Burns after speaking with Justin Howard disabled call recording for Lock Haven but was denied authority to disable call recording for Member Engagement Call Center around 3pm.
- April 23rd, 2025- Michael Burns speaking with Brittany Baker:

Sworn Statement of Events

    - Michael stated that no training or monitoring had actually taken place with any of the Lock Haven or Member Engagement team as previously stated by Justin and Denise.
    - Brittany stated that a law was broken despite their repeated attempts to highlight the situation and confirm compliance.
    - Brittany stated she was going to speak with her attorney about what actions she can take as this was increasing in severity of the level of violations but also the number and frequency
- April 23rd, 2025 to May 16th, 2025- Actions and Review Brittany Baker took in order of action
    - Reached out to Brittany's attorney regarding concerns, emails and meetings calling out illegality of actions sanctioned by Justin
    - Reviewed the number of calls the Lock Haven made between February 27th and April 22nd which included:
        - 674 External Calls to or from phone numbers outside the organization
        - 497 Internal Calls with approximately 250 from the 8 Lock Haven extensions that did not have a call recording announcement
    - Reviewed the number of outgoing calls estimated for Member Engagement made between November 27th, 2023 and current which included:
        - 1630 loan applications for member call back on decisions
        - 2270 estimated based on documented outbound calls for Skip Payments, Bad Address, Loan Opportunities, etc
    - Researched who would handle review and potential investigation of crime which included:
        - Federal Bureau of Investigation
        - Federal Communications Commission
        - Federal Trade Commission
        - Attorney General
    - Filed Complaints with:
        - FBI- May 14th, No response
        - FTC- May 14th, Report #187474567, No response
        - FCC- May 14th, responded that it is a Pennsylvania law, not federal and would need to be investigated by the state Attorney General
        - Chairman of the Board of Directors for the Credit Union- May 15th, responded that they do not involve themselves in employee matters, despite the complaint email stating complaint and laws being broken, and that they were in communication with Justin Howard in relation to the situation meaning Justin Howard became aware I filed a complaint outside of the internal complaint process previously followed and documented.
        - PA Attorney General- May 15th, responded that they only take referral cases from the local District Attorneys
        - Local DA and Detectives- May 15th, Left voicemail and no response
        - NCUA- May 16th, response received and information gathering in process

<u>Total Potential Impact- Exceeds 20,000</u>

2- FTC Complaint filed Thursday March 20th, 2025 at 8:37am report # 185192465 based on circumstantial information that can be elaborated on and substantiated in part or whole by:
   a. Michael Burns- Chief Financial and Information Officer
   b. Eric Ditillio- Director of IT and Facilities
   c. Kristina Rotoli- Operational Support Manager

Wednesday February 19th, 2025 to Thursday March 20th, 2025 events

- 2/19- Kristina Rotoli called Brittany Baker- Missed call 9:06am
- 2/19- Brittany Baker called Kristina Rotoli- Answered call 9:07am

  - Kristina inquired if Brittany was aware of any policy changes for personal devices and company access.
  - Brittany inquired as to what items giving examples of Teams, iSolved, email, Heidi, SharePoint, etc.
  - Kristina stated, yes.
  - Brittany stated not that she was aware of and that iSolved can be accessed personally, Heidi allows it but shouldn't be because of member data saved on there, and the rest was not supposed to be accessed off company devices.
  - Kristina asked about Teams because of book clubs Denise Lariviere had started for development which occurred when Brittany was still part of Denise's team.
  - Brittany confirmed yes, Teams is not to be accessed because of member data sent back and forth on there too and that Teams that was supposed to be sent up per conversation at the time with Denise to the best of Brittany's knowledge was to be an entirely separate username and password for each person to access and be created by now retired IT professional, Robert Eisley, but that was all Brittany knew as she ended up not participating in the book club and her teams started their own.
  - Kristina confirmed yes, that was the plan but that was not entirely what happened.
  - Brittany advised Kristina to reach out to Michael Burns with any concerns.
- 2/19- Brittany when walking into Michael Burns office observed Michael reviewing device access logs
- 2/19- Michael asked Brittany to attempt to sign in to her corporate email from her personal device around 4:30pm
  - Brittany remained in Michael's office during this attempt stating it made her uncomfortable to attempt this
  - Michael confirmed he was giving permission to do this in his presence to test IT restrictions he was attempting to put into place.
  - Brittany inquired as to why they were not already in place as she would have thought
  - Michael stated he thought they were and something had come to his attention that it was not working as it should so he was attempting to correct the issue
- 2/20- Michael asked Brittany to attempt to sign in to her corporate email from her personal device to test change and confirmed it was in fact, now restricted.
- 2/20 to 3/14- Brittany walked into Michael's office several times where Michael was reviewing, searching, or auditing IP addresses which Brittany inquired about issue and was told it was for a potential situation.
- 3/11- Denise Lariviere's email DLariviere@horizonfcu.org was terminated and a new username and email was created of Denise.Lariviere@horizonfcu.org
- 3/14- Denise Lariviere was in office with third-party conversation to Elizabeth Fink regarding email and IT working on getting email to work.
  - Elizabeth made a comment to Brittany about issues with IT
  - Brittany inquired about issue
  - Elizabeth stated that Denise communicated to her that IT "blew up" her email and couldn't fix it that they had to create a new email instead and were having trouble getting it to work on her devices
- 3/19- Brittany researched based on the above information and context clues inferring that Denise Lariviere's email was either:
  - Loaded onto a personal device of hers by her actions
  - Compromised and attempted to be access by an unknown external person

  Based on these context clues and inference the information researched the following:
  - FTC Safeguard Act requires reporting if there is potential/suspected for 500 or more impacted or compromised PII members
  - FTC Safeguard Act requires reporting within 30 days of becoming aware of the potential/suspected compromise

Sworn Statement of Events

- Microsoft sync retains sync data for 30 days, 90 days, or 6 months depending on the program and type of data so depending on the first attempted connection there may or may not be any record to prove or disprove conclusively if something synced successfully
- The amount of data with member information shared back and forth via Teams and emails with Denise to the best of Brittany's knowledge over the last 6 months included:
    - Consistent Email Size- Exceeded 70,000 emails with members, private corporate information, employee data, etc
    - Full member lists in Excel for core conversion- 15,000 members and 5,000 joints or non-members
    - Member lists for data cleanup- over 5,000 members
    - Member lists for loan closings/applications- over 5,000 members
    - Member lists for Skip Payment and Auto Recapture campaigns- over 1,500 members

- 3/20- Brittany asked Michael Burns at 8am if he was aware of the FTC Safeguard Act reporting requirements for potential/suspected compromise
    - Michael stated he was aware of the reporting requirement if there were any confirmed compromises
    - Michael also stated that based upon direction from Justin that Justin does not believe data was compromised outside employees but would not confirm details just repeated what I inferred
    - Michael also stated that he and Eric Ditillio recommended strongly to file as precaution which was declined by Justin
- 3/20- Based on all information and suspected compromise with potential exposure Brittany felt it was in hers for having cursory knowledge, the members, and credit union's best interest to file report.

<u>Total Impact- 6 Members</u>

<u>** Ongoing Violation, No Member Notice **</u>

3- Gmail Email with Member Data on March 18th, 2025 based on circumstantial, observed, and experienced information that can be elaborated on and substantiated in part or whole by:

a. Michael Burns- Chief Financial and Information Officer

b. Keith McGinness- Lock Haven Branch Manager

Tuesday March 18th, 2025 Brittany Baker was assisting Keith McGinness with a work related task and Keith was sharing his desktop via the sharing app Teams.

- To find the one time passcode needed to access the One Span electronic signature application Brittany requested that Keith click on his Junk folder in Outlook to see if the password was there
- Brittany observed and collected a screenshot that Denise Lariviere using her personal, non-company, Gmail account sent Keith McGinness and Amber Bailey an email with member account numbers in them.
- Brittany contacted Michael Burns who requested the image capture
- Michael Burns spoke with Justin Howard about incident
- Justin Howard in 2022 with a member compromise of a former employee sending sensitive member data via email provided member letters as required for notification, employee organizational wide announcement including the impacted member names, and documented the mitigation efforts for those impacted for compliance and retention.
- As of May 22nd, 2025 the impacted members from the 2025 incident have not been announced organization wide and per Brittany's review of accounts have not received any letter that has been retained informing them of the compromise as is required by the Safeguard Act.

Sworn Statement of Events

Total Impact- 2 Members

4- Cash Withdrawal for Member on February 15th, 2024 based on circumstantial, observed, and experienced information that can be elaborated on and substantiated in part or whole by:

c. Michael Burns- Chief Financial and Information Officer
d. Katelyn Smith- Former Employee
e. Kristina Rotoli- Operational Support Manager

Thursday February 15th, 2024 to Friday February 20th, 2024

- Alyssa Gravelle received a call from a member around 3:15pm regarding their Visa Debit Card no longer working, not having their new Mastercard, being out of state, and wanting to speak to a manager (Call Recording listened to in shared office space by Denise Lariviere)
- Call was transferred to Denise Lariviere around 3:45pm to which the conversation with member in shared office space included:
  - Member is in New York
  - Does not have new Mastercard debit card
  - Has no other cards, checks, cash, or people they are with to provide funds for fuel to return home
  - Denise inquired how much cash they would like to have
  - Denise stated she will call member when she gets to the area they are in which was somewhere based on town names Brittany heard between Elmira New York and Watkins Glen New York.
  - Denise wrote down phone number they preferred to be called on
- After Denise disconnected call Brittany inquired as to what was happening to which Denise repeated what Brittany had heard (above) and then added that she was going to Lycoming Creek to take cash out the members account to run it up to them.
- Brittany told Denise that she absolutely cannot and should not take cash out of a member's account without them being present let alone then transporting the cash not just to the member but several hours away across state lines.
- Denise stated she would take the receipt with her and have them sign it
- Brittany repeated the same statement and that she could not stop Denise from doing things on her own time, with her own money, and her own actions but if she insisted on going to a branch and having another employee withdrawal cash which would involve them in the activity Brittany would be reporting it to compliance and Justin immediately.
- Denise left without confirming what her intentions were and Brittany heard Denise repeat her plan to Katelyn Smith, Director of Operations.
- Brittany is 95% sure Denise left her work cell phone in their shared office which means, unable to confirm, that Denise used members contact information from her personal device.
- Brittany immediately reported the situation to Michael Burns around 4pm
- Michael Burns reached out to Justin

Friday February 16th, 2024

- Denise stated to Brittany that she took cash out of her account and that the member wrote her a check to repay her.
- Denise stated that she still did not understand or agree that there was anything wrong with what she did

February 20th, 2024

- Brittany talked with Justin about the situation as it cause tension and problems between Brittany and Denise.
- Justin stated that I could have or should have let it go
- Brittany stated she would have just reported it and not stopped Denise if it would not have negatively impacted another employee causing them to possibly lose their job for doing what their executive told them to do
- Justin stated that the employee could have said no
- Brittany state that we both know that would never fly with telling Denise no
- Justin stated that we wouldn't have necessarily fired an employee for that

- Brittany disagreed with that and stated that would have been the only logical thing to do and there was no way to guarantee the employee would be safe and she would not accept that which also is not the main point of the whole issue.

<u>Total Potential Impact- Exceeds 500</u>

5- Reg B 2022 Cleanup on or around Wednesday October 12th, 2022 based on circumstantial, observed, and experienced information that can be elaborated on and substantiated in part or whole by:

f. Michael Burns- Chief Financial and Information Officer
g. LeAnna Harter- Accounting Professional (Formerly an Underwriter)
h. Amanda Ferguson- Consumer Lending Manager

Brittany uncovered during review of applications and report query system options that there were around 209 loan applications dating from 01/01/2017 through 02/02/2022 that did not meet Regulation B requirements because of:

a. Undecisioned- Not submitted to underwriting to render a decision
b. No Adverse Action- No Adverse Action sent to member for denial, counteroffer, expiration, incomplete, etc

Brittany discussed this with Justin Friday November 4th, 2022 for plan of action to address

- Brittany stated these were just the ones that has never been submitted or adversed and were concerned about the number without communicating decision within 30 days as required
- Justin stated that there is an acceptable margin of error to be expected with this
- Brittany stated she understood mistakes happen but that we were looking at a 1.56% margin of error based on the 13,377 applications submitted during the same time for just these.
- Brittany also stated that margin of error when reviewing a sampling of applications of around 50 for communicating decision within 30 days raised estimated margin or error to around 9.56% with 4 of the 50 sampled not meeting requirements.
- Brittany stated she created a new report in the system to attempt to correct the lapse in process
- Brittany stated she has the report and planned on putting notes in the applications and sending Adverse Actions to them, that late was better than never
- Justin stated to only send Adverse Actions to applications from the current year, 2022, to not draw attention to the issue.

<u>Total Potential Impact- Around 30 Members</u>

6- Reg B 2023 to 2025 Pulling from Branch between March 29th, 2023 and May 19th, 2023 and again October 2023 and January 2025 based on circumstantial, observed, and experienced information that can be elaborated on and substantiated in part or whole by:

i. Michael Burns- Chief Financial and Information Officer
j. LeAnna Harter- Accounting Professional (Formerly an Underwriter)
k. Amanda Ferguson- Consumer Lending Manager

Brittany and Amanda uncovered that existing Regulation B review report from item with Reg B before this was not broad enough to identify applications without decisions to meet Regulation B requirements. This was discovered when one of the applications

- May 2023- Brittany and Amanda created 4 additional reports with multiple search criteria to review and catch errors between May and July 2023 tweaking them as they continued to find applications missed
- July 2023- Brittany and Amanda implemented a new process for applications to ensure the Loan Officer was aware they had an application sitting undecisioned that needed attention. This process was:
    - Between days 1-3 of application Real Estate Processors monitored Real Estate loans for disclosures needed and reached out or did best estimate for LE and GFE

  - Between days 3-7 all applications without an Underwriter decision the Loan Officer would get a reminder email
  - Between days 8-14 all applications without an Underwriter decision the Loan Officer and their supervisor would get a reminder email
  - Between days 15-21 all applications without an Underwriter decision the Loan Officer, their supervisor, and the their next level manager would get a reminder email
  - Days 28-30 all applications without an Underwriter decision the Loan Officer, the next two levels of manager, and Justin would get a reminder email stressing Regulation B timelines and impending violation
- July 2023- Brittany discussed concerns with Justin the 9 applications that were uncovered as undecisioned and not completed by Denise Lariviere which was a 1.26% error rate for all applications for the time period of 03/28/2023 to 05/19/2023
- Justin stated that policy and procedure shouldn't change due to one person's errors and that he instructed Denise to pull herself from the branch network and not to continue to take applications
- Brittany stated that it was an excessive change necessitated by the vulnerabilities repeatedly identified by the issues caused by Denise
- August 2023 through November 2024 total applications submitted by Denise is 36 over 16 months or 2.25 or a 2.78% error rate per month vs the average number prior to August 2023 averaged 32 or a 9.38% error rate per month.
- October 2023 there was another application that despite all of the previous planning, reports, and changes and including Justin in the notification process became a Regulation B violation by Denise.
- November 2023 with the repetitive issues identified by Brittany related to Denise and lending compliance a collective decision by Brittany, Denise, and Justin was to remove Denise as an approved underwriter
- January 2024- Brittany and Cynthia Russell (Former Compliance Professional) created an addendum to 507 Consumer Loan Policy with a Regulation B flow chart to help avoid future compliance violations
- January 2025- Denise began an application for her aunt 01/06/2025 that was never completed or submitted for underwriting.
- January 2025- Amanda sent Reg B reminder email
- January 2025- Amanda sent Reg B reminder email
- January 2025- Brittany emailed Justin frustrations regarding issue with Regulations and compliance that nothing will be done about it
- January 2025- Justin emailed Brittany asking how she could state that nothing will be done
- January 2025- Brittany had verbal conversation with Justin stating that her frustrations and perception that violations and issues will continue to happen as the past actions and behaviors by Denise as demonstrated over the last 3 years
- February 2025- Brittany sent Reg B reminder email to Denise and Justin
- February 2025- Application became a Regulation B violation
- February 2025- Justin emailed Brittany inquiring what application was the Regulation B violation to have a conversation with Denise
- Brittany stated that it was only one item
- Justin stated in email reply that one is one too many
- March 2025- Brittany stated in email and again verbal conversation about frustration related to compliance and violations that the ongoing issues place her in a very uncomfortable position related to compliance, liability, and risk.
- Justin stated that he could not confirm what was or was not happening with another employee but that it was being handled
- Brittany stated that has been the same response and same outcome over time

Sworn Statement of Events

Total Impact- 3 Employees

7- Whistleblower anonymity violation by Justin Howard and hostile response to impact December 13th, 2024 through March 4th, 2025 based on circumstantial, observed, and experienced information that can be elaborated on and substantiated in part or whole by:

l. Michael Burns- Chief Financial and Information Officer

m. Lori Boob- Former Employee

Justin Howard information Brittany Baker that she had been under investigation for alleged loan fraud lodged by employees. Justin proceeded to tell Brittany the details of the investigation and review as below:

- November 2024 Nicole Brady (Former Lock Haven Manager) alleged that a loan underwritten and approved by Brittany Baker in September of 2024 under application #s 27915 and 27940 was fraudulent and information was put on the application incorrectly to Jody Frantz, Human Resources Professional, and Lori Boob, Nicole's direct supervisor.
- October 2024 Michael Burns and the Compliance Professional, Cynthia Russell, had questions about the applications and the processing as it did not make sense to Cynthia. Brittany Baker and Michael Burns spoke and Brittany walked Michael through the applications and the notes all documenting and referencing each other. Michael stated it was correct and documented.
- December 2024 Justin stated December 13th, 2024:
  - That during the investigation they spoke with Lori Boob who stated she has received the allegation from Nicole and looked into it but did not see anything wrong so took it no further
  - Justin stated that Nicole and Lori were terminated for not bringing it to compliance or to someone else's attention due to timing requirements for reporting for BSA compliance involving an internal employee.
  - Justin stated that he knew the details of both applications inside and out and that the original application entered by Nicole with the correct information was closed by Loan Processing when it was brought to Brittany's attention by Processor Kaleb Daniel's that it would negatively impact the member to refinance their existing loan this way as it was not entered properly by Nicole.
  - Brittany stated that she had spoken directly with State College Branch Manager Tara Waltz and had emailed her explicit and detailed instructions for refinancing the application properly to avoid the exact issue Nicole created.
  - Brittany stated that she had instructed the Mortgage Loan Originator, Rebecca Metz, to send the referral to Tara as she was aware of the situation and how to handle it.
  - Brittany stated she was unaware that Rebecca had sent the referral for the refinance to Nicole to give her proper instructions in time so Brittany and Kaleb reentered and processed the second application the correct way referencing the first application for all details, notes, documentation, and ratios as needed.
  - Justin stated that this was correct and his only suggestion was that the loan should have been pushed back to Nicole first to reenter it correctly.
  - Brittany stated the reason it was not was that members were already in the branch and waiting for documents so she made the decision that the coaching could wait and would address it at a later time.
  - Brittany stated she was not comfortable with what Justin shared and that telling her the details of the investigation and information was not appropriate or ok.
  - Justin stated it was only right to tell me the information since I was investigated and that I had a right to know.
  - Brittany disagreed
- March 3rd, 2025- Brittany emailed Justin stating that the knowledge of the investigation and details shared was still bothering her mentally and that it was not ok
- March 4th, 2025- Justin and Brittany had a verbal conversation to which:
  - Justin stated that Brittany dwelling on the investigation and having knowledge of information that she was not comfortable with knowing is part of her problem.

Sworn Statement of Events

That she holds on to things and lets them effect her and that she needs to learn to let it go or she will never be able to move on.

- Brittany stated that this in an ongoing and repeated issue that keeps coming up that violations happen such as this with violating the protections of the people lodging a complaint, she brings attention to them, is told they are addressed or will be handled, and then they continue to happen
- Justin stated that Horizon may not be the right fit for Brittany if this is how she feels and if she cannot learn to let things go and that she should be a CEO again somewhere as she has the skills and knowledge to be that level executive and it would give her control over how things are done.

I, Brittany Elizabeth Baker, attest and affirm that the information provided in this document is truthful, correct, and accurate to the best of my knowledge.

Brittany Elizabeth Baker
Signature

5/22/2025
Date

This document was acknowledged before me on 05/22/2025 by, Brittany Elizabeth Baker in the county of Lycoming in the state of Pennsylvania.

Kristina L Rotoli
Notary

Commonwealth of Pennsylvania - Notary Seal
Kristina L. Rotoli, Notary Public
Lycoming County
My commission expires August 25, 2028
Commission number 1375897
Member, Pennsylvania Association of Notaries