**User Name:** Jessica Mazzeo
**Date and Time:** Wednesday, October 21, 2026 10:37 PM EDT
**Job Number:** 299648244

## Document (1)

1. *Willis v. Vie Fin. Group, Inc.*

   **Client/Matter:** 669407
   **Search Terms:**
   **Search Type:** Natural Language
   **Narrowed by:**

| Content Type | Narrowed by |
|---|---|
| | -None- |

# Willis v. Vie Fin. Group, Inc.

United States District Court for the Eastern District of Pennsylvania

August 6, 2004, Decided

CIVIL ACTION, NO. 04-435

**Reporter**
2004 U.S. Dist. LEXIS 15753 *; 86 Empl. Prac. Dec. (CCH) P41,895; 21 I.E.R. Cas. (BNA) 1111

JULIAN WILLIS, et al., Plaintiffs v. VIE FINANCIAL GROUP, INC., Defendant

**Disposition:** Defendant's motion to dismiss amended complaint granted in part and denied in part.

**Counsel:** For JULIAN WILLIS, MICK CALIRI, Plaintiffs: SIDNEY L. GOLD, TRACI M. GREENBERG, SIDNEY L. GOLD & ASSOCIATES, PC, LEAD ATTORNEYS, PHILADELPHIA, PA.

For VIE FINANCIAL GROUP, INC., Defendant: DAVID J. WOLFSOHN, JEREMY SIMON, WILMER CUTLER PICKERING HALE AND DORR LLP, LEAD ATTORNEYS, WASHINGTON, DC, PETER H. LEVAN, JR., HANGLEY ARONCHICK SEGAL & PUDLIN, LEAD ATTORNEY, PHILADELPHIA, PA, STEVEN F. CHERRY, WILMER CUTLER & PICKERING LLP, LEAD ATTORNEY, MCLEAN, VA.

**Judges:** **[*1]** MARY A. MCLAUGHLIN, J.

**Opinion by:** MARY A. MCLAUGHLIN

## Opinion

MEMORANDUM AND ORDER

McLaughlin, J. August 6, 2004

The plaintiffs, Julian Willis and Mick Caliri, allege that their former employer, Vie Financial Group, Inc. (hereinafter "Vie"), retaliated against them in violation of the whistleblower provisions of the Sarbanes-Oxley Act of 2002, *18 U.S.C. § 1514A* (hereinafter the "Sarbanes-Oxley Act" or the "Act"), and Pennsylvania common law. On April 30, 2004, the defendant filed a motion to dismiss the amended complaint. The Court held a hearing on June 16, 2004. The Court will deny the motion in part and grant it in part.

The main issue presented by the motion is whether the exhaustion requirement of the Sarbanes-Oxley Act precludes recovery for a discrete act of retaliation that arose after the filing of the administrative complaint but was never presented to the administrative agency for investigation. The Court holds that it does.

I. Background

Plaintiff Julian Willis was employed by Vie from August 19, 2002 until May 14, 2003 as a Vice President of Marketing. Am. Compl. PP11-12. Plaintiff Mick Caliri was employed by Vie from April 30, 2000 until **[*2]** February 26, 2003 as a Network Administrator. Id. PP30-31.

The plaintiffs allege that on January 14 and 15, 2003, Willis became aware that Vie was not in compliance with a variety of securities laws and NASD licensing requirements. On January 22, 2003, Willis addressed these issues in an email to the defendant's General Counsel, William Uchimoto. Willis claims that he was almost immediately subjected to retaliation for reporting the unlawful actions. For example, the president and COO, Trevor Price, threatened to terminate Willis's employment. Id. PP13, 16, 17.

On January 30, 2003, Willis's job responsibilities were stripped from him. He was told that he would report to Jim Pak instead of Trevor Price. Willis was asked to sign a statement indicating that the fraud was remedied and that he was not retaliated against as a result of registering the complaint, but Willis refused to sign the document. Willis further stated that he refused to take part in the unlawful activities and that he refused to take part in any coverup of the same. On February 27, 2003, Pak and Uchimoto informed Willis that there was no marketing work for him and that he should consider resigning his position **[*3]** of employment with Vie. Id. PP18-21.

Willis registered another complaint to Vie's Board of Directors on March 4, 2003. On April 11, 2003, he registered another complaint by email to Vie's Board of Directors, detailing other instances of disregard for NASD licensing requirements. On May 14, 2004, he was informed that his position was terminated. Id. PP25-29.

Plaintiff Caliri, on or about January 8 and 9, 2003, lawfully, in the course of his employment, accessed Vie's network data and became aware that certain senior officers did not possess the requisite NASD licenses. He met with Willis on January 14, 2003 to register a complaint and to assist Willis in conducting an investigation. Willis reported Caliri's concerns to Trevor Price on January 20, 2003 and to William Uchimoto on January 22, 2003. Both of these individuals had supervisory authority over both plaintiffs. Id. PP32-35.

Caliri's administrative privileges were revoked on or about January 24, 2003. He was placed on administrative leave on February 24, 2003 in retaliation for registering complaints of corporate fraud. His job was terminated on February 26, 2003 in further retaliation. Id. PP36-38.

Willis **[*4]** filed an administrative complaint, dated April 29, 2003, with the Department of Labor, alleging that he was retaliated against by the defendant in violation of the Sarbanes-Oxley Act for reporting violations of federal securities laws and NASD licensing requirements. [1] He described the retaliation as a threat to terminate him and the taking away of his job responsibilities. [2] Def.'s Mot. to Dismiss, Ex. B2.

II. Discussion

The plaintiffs allege that the defendant retaliated against them in various ways for reporting violations of NASD licensing requirements and the securities laws. Count I rests on the whistleblower provision **[*5]** of the Sarbanes-Oxley Act. Willis claims that the defendant violated the Act by threatening to terminate him, stripping him of his job responsibilities, and terminating him. Caliri claims that the defendant violated the Act by placing him on administrative leave and then terminating him. Count II alleges wrongful discharge under Pennsylvania law.

As to Count I, the defendant argues that Willis's claims based on a threat to terminate and termination should be dismissed because Willis failed to satisfy the administrative exhaustion requirements of the Act. Vie contends that Willis's claim based on a removal of his job responsibilities and Caliri's claim should be dismissed because they fail to state a claim. As to Count II, Vie argues that Pennsylvania does not recognize a wrongful discharge claim under these circumstances. [3]

[1] Both parties concede that the administrative complaint is authentic and that Court may consider it for the purposes of this motion. Tr. of June 16, 2004, Hr'g (hereinafter "Tr.") at 14.

[2] Caliri filed an administrative complaint on May 7, 2003, alleging that his termination violated the Sarbanes-Oxley Act. It is not an issue in the defendant's motion. Id. at 8 n.1.

[3] When considering a motion pursuant to *Federal Rule of Civil Procedure 12(b)(6)*, the Court must accept all allegations in the plaintiff's amended complaint as true. All inferences See will be drawn in the light most favorable to the plaintiff. *Port Auth. v. Arcadian Corp., 189 F.3d 305, 311 (3d Cir. 1999)*. The defendant briefly argues that its motion should be treated as a motion under *Rule 12(b)(1)*, because administrative exhaustion under the Sarbanes-Oxley Act is jurisdictional. The Court will treat the motion as a motion under *Rule 12(b)(6)*. The Third Circuit treats motions based on administrative exhaustion arguments as motions for failure to state a claim under *Rule 12(b)(6)* as opposed to motions for lack of subject matter jurisdiction under *Rule 12(b)(1)*. See *Anjelino v. New York Times Co., 200 F.3d 73, 87 (3d Cir. 2000)*.

**[*6]** A. Sarbanes-Oxley Act Claims

The so-called whistle blower provision of the Sarbanes-Oxley Act is *Section 806(a)*. It prohibits companies from discriminating against an employee in the terms and conditions of employment because of any lawful act done by the employee:

> . . . to provide information, cause information to be provided, or otherwise assist in an investigation which the employee reasonably believes constitutes a violation of . . . any rule or regulation of the Securities and Exchange Commission, or any provision of Federal Law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by--
>
> (A) a Federal regulatory or law enforcement agency;
>
> (B) any Member of Congress or any committee of Congress; or
>
> (C) a person with supervisory authority over the employee . . . .

*18 U.S.C. § 1514A(a)(1)*.

1. Willis's Sarbanes-Oxley Act Claim

Because the defendant's primary argument for dismissal of Willis's federal claim is a failure to satisfy the administrative exhaustion requirements of the Act, the Court will begin its analysis with a description of **[*7]** the administrative scheme set up by the statute and regulations.

a. Administrative Scheme

Before an employee can assert a cause of action in federal court under the Sarbanes-Oxley Act, the employee must file a complaint with the Occupational Safety and Health Administration ("OSHA") [4] and afford OSHA the opportunity to resolve the allegations administratively. *18 U.S.C. § 1514A(b)(1)(A)*. The administrative complaint must be filed "within 90 days after an alleged violation of the Act occurs" and include "a full statement of the acts and omissions, with pertinent dates, which are believed to constitute the violations." Id. *§ 1514A(b)(2)(D)*; *29 C.F.R. § 1980.103(b,d)*. If the employee has met these requirements for a particular violation, and a final administrative decision has not issued within 180 days of the filing, the employee can proceed with an action in federal court based on that violation. *18 U.S.C. § 1514A(b)(1)(B)*.

**[*8]** After a complaint is filed with OSHA, an investigation of the unfavorable personnel action alleged in the complaint may commence. A complaint "will be dismissed unless the complainant has made a prima facie showing that protected behavior or conduct was a contributing factor in the unfavorable personnel action alleged in the complaint." *29 C.F.R. § 1980.104(b)*. OSHA will undertake an investigation only if the complainant makes such a prima facie showing. An investigation will not be conducted if the named person demonstrates by clear and convincing evidence that it would have taken the same unfavorable personnel decision in the absence of the complainant's protected behavior or conduct. *29 C.F.R. § 1980.104(c)*.

Within 60 days of the filing of the complaint, OSHA issues written findings of whether or not there is reasonable cause to believe that the respondent has discriminated against the employee in violation of the Act. If OSHA finds for the employee, the findings will include a preliminary order providing relief. Then, the complainant and the respondents may file objections and request a hearing. *29 C.F.R. §§ 1980.105-1980* **[*9]** *.106.*

---

[4] The statute states that the administrative complaint is to be filed with the Secretary of Labor, but the Secretary of Labor has delegated that responsibility to OSHA under the regulations that it has promulgated. See *29 C.F.R. § 1980.103(e)*.

A hearing is then scheduled before an Administrative Law Judge ("ALJ"). After the ALJ issues a decision, the parties may file a petition for review by the Administrative Review Board. This review is limited to a review of the factual determinations of the ALJ under the substantial evidence standard. Within 60 days of a final order, any aggrieved party may file a petition for review in the Circuit Court of Appeals. If a petition is filed, the record of the case, including the record of proceedings before the ALJ, is transferred to the circuit court. *29 C.F.R. §§ 1980.109-1980.112*.

b. Exhaustion of Willis's Claims

Willis concedes that he did not file an administrative complaint with respect to his termination. His administrative complaint alleged that Vie violated the Act by threatening to terminate him and by stripping him of his job responsibilities. He was terminated (or furloughed as the defendant contends) after the filing of the administrative complaint. He never sought to amend his administrative complaint or to file a new complaint.

Nor did he inform OSHA that he was complaining in any way about his termination. [5]

**[*10]** The defendant argues that both the threatened termination and termination claims are time barred: the former because it occurred more than 90 days before the filing of the administrative complaint; and the latter because it was never presented to the administrative agency. The defendant relies primarily on *AMTRAK v. Morgan, 536 U.S. 101, 153 L. Ed. 2d 106, 122 S. Ct. 2061 (2002)*.

The Supreme Court in Morgan held that the Title VII exhaustion requirement "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period" even when the acts "are related to acts alleged in timely filed charges." *536 U.S. at 105, 113*. The Supreme Court noted that the charge filing provision of Title VII "specifies with precision" the prerequisites that a plaintiff must satisfy before filing a suit. The Court relied on the language of the filing provision, which states that "a charge under this section *shall be filed* within one hundred and eighty days *after the alleged unlawful employment practice occurred*." *Id. at 109* (discussing *42 U.S.C. § 2000e-5(e)(1)*) (alteration **[*11]** in original).

The Supreme Court set out the guiding principles for its analysis:

> First, discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the . . . time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*Id. at 113*.

Willis concedes that if the threat to terminate him had been made more than 90 days before he filed his administrative complaint, *Morgan* prevents him from raising that claim now. Tr. at 36. That is clearly correct. The charge filing provisions of the Sarbanes-Oxley Act and Title VII contain very similar language. Both statutes use **[*12]** the terms "shall" to set forth the timing of an action's commencement. *Section 1514A(b)(2)(D)* states: "an action . . . shall be commenced not later than 90 days after the date on which the violation occurs." This is similar to *§ 2000e-5(e)(1)*'s language, "after the alleged unlawful employment practice occurred."

---

[5] The plaintiff contends that the administrative agency knew that the plaintiff was furloughed after the filing of the administrative complaint. It is correct that Vie stated in its DOL submission that Willis was furloughed; but, nothing in the submission suggested that Willis had been terminated or that his inclusion in the furlough program was in any way improper. The critical point is that Willis never claimed to the DOL that he considered his furlough to be improper or illegal in any way. The whole point of the exhaustion requirement is to allow the administrative agency to investigate and adjudicate a plaintiff's claims. If the plaintiff does not tell the agency his claims, the agency cannot fulfil its responsibilities under the statute.

The Court cannot tell from the federal court complaint exactly when the threat occurred. In his amended complaint, Willis alleges that a threat to terminate him was made "almost immediately after" Willis reported his concerns to William Uchimoto. The report to Mr. Uchimoto occurred on January 22, 2003. The administrative complaint was dated April 29, 2003 -- over 90 days from the report. If discovery reveals that the alleged threat was made over 90 days prior to the filing of the administrative complaint, any claim based on the threat will be time-barred.

The plaintiff argues that Morgan does not preclude his termination claim because it applies only to discriminatory acts occurring prior to the filing of the administrative complaint. He relies on Third Circuit cases that pre-date Morgan. Prior to Morgan, the Third Circuit did not require Title VII plaintiffs **[*13]** to file an additional EEOC complaint or to amend an existing EEOC complaint when discriminatory actions continued after the EEOC complaint was filed, so long as the actions were fairly within the scope of the EEOC complaint or the investigation growing out of that complaint. The purpose of Title VII, according to the Third Circuit, was not furthered by requiring the employee to file additional complaints and restart the 180 day waiting period in those situations. [6] If the EEOC attempted to achieve a consensual resolution of the complaint and discrimination continued, there was little likelihood that further conciliation would succeed. *Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)*; see also *Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984)*.

**[*14]** The Third Circuit has not considered the impact of Morgan on the line of cases allowing Title VII claimants to sue on new claims reasonably within the scope of the original charge. [7] Other courts have, however. See *Martinez v. Potter, 347 F.3d 1208, 1210-11 (10th Cir. 2003)* ("The rule [enunciated in Morgan] is equally applicable . . . to discrete claims based on or incidents occurring ***after*** the filing of Plaintiff's EEO Complaint"); *Bowie v. Ashcroft, 283 F. Supp. 2d 25, 34 (D.D.C. 2003)* (given the clear directive of the Supreme Court, "prior cases allowing plaintiffs to file subsequent, similar claims for the first time in federal court simply do not survive Morgan.)

The defendant **[*15]** has made a strong argument that Morgan mandates dismissal of a Title VII claim, such as a retaliatory termination, that has not been presented to the EEOC either in a separate complaint or in an amendment to an existing complaint. That argument is stronger in the Sarbanes-Oxley context because of the difference between the administrative procedures underlying the two statutes.

The administrative scheme underlying the Sarbanes-Oxley Act is judicial in nature and is designed to resolve the controversy on its merits, as opposed to the administrative procedures underlying Title VII. As described above, the Sarbanes-Oxley Act provides for an investigation of the actions alleged in the complaint, an issuance of findings and a preliminary order, a right to a hearing before an ALJ, a review before the Administrative Review Board, and a review before the Circuit Court of Appeals. These procedures stand in contrast to those of Title VII, which are geared toward fostering settlement. The purpose of permitting subsequent, unexhausted Title VII claims to proceed was to foster informal conciliation. *Waiters, 729 F.2d at 237*.

Under the Sarbanes-Oxley Act procedures, a claimant **[*16]** could not appeal a subsequent claim, which was not before the ALJ, to the Administrative Review Board. An appeal of an ALJ decision to the Administrative Review Board is limited to the factual determinations of the administrative law judge under the substantial evidence standard. *29 C.F.R. § 1980.110(b)*. A subsequent appeal to the Court of Appeals is based on the record of the case, which includes the proceedings before an ALJ. *29 C.F.R. § 1980.112*. If an ALJ issued a decision based on a record that did not include an allegation of a wrongful termination, the administrative plaintiff could not raise the termination on appeal.

---

[6] Before filing a Title VII suit, an employee charging an employer with discrimination must file a complaint with the EEOC, and wait 180 days while the EEOC attempts to resolve the dispute before resorting to litigation. At the end of the 180 day period, the employee may sue. *Id. at 237*.

[7] The Third Circuit applied Howze in a non-precedential case post-dating Morgan, but it did not consider the impact of Morgan on the rule in Howze. *Neiderlander v. Am. Video Glass Co., 80 Fed. Appx. 256, No. 03-1288, 2003 WL 22508495, at *4 (3d Cir. Nov. 5, 2003)*.

The same analysis should apply in this situation, where a court action is brought after the administrative process has run for 180 days without final resolution of the claims asserted in the administrative complaint. In each case, the question is one of administrative exhaustion. The Court of Appeals can review only those claims that have been administratively exhausted. Similarly, this Court can only conduct a "de novo review" of those claims that have been administratively exhausted.

The defendant presented **[*17]** to the Court a hypothetical that effectively demonstrates this point. Willis would have been able to seek de novo review in this Court if his claim had proceeded further in the administrative process -- even to the point of a pending appeal of an adverse ALJ decision to the Administrative Review Board. [8] In that situation, Willis's court claims clearly would have been limited to the claims that were part of the administrative record at the time the 180 day period expired. The mere fact that the 180 day period was reached in this case at an earlier stage of the administrative process should not lead to a different result. The administrative record at that time was defined by Willis's administrative complaint, which did not raise the issue of his termination.

**[*18]** The Court holds that Willis is precluded from pursuing his retaliatory termination claim in this Court.

c. The Removal of Willis's Job Responsibilities

The defendant argues that the claim based on Willis's loss of job responsibilities should be dismissed because a loss of job responsibilities is not one of the enumerated acts that constitute a violation of the statute.

The Act provides that no company may "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee." *18 U.S.C. § 1514A(a)*. The Court concludes that the complaint sufficiently alleges a change in employment conditions within the meaning of the Act. See *Glanzman v. Metro. Mgmt. Corp., 290 F. Supp. 2d 571, 582 (E.D. Pa. 2003)* (recognizing that significantly diminished material responsibilities can constitute a materially adverse change in working conditions).

2. Caliri's Sarbanes-Oxley Act Claim

The defendant argues that Caliri's Sarbanes-Oxley Act claim should be dismissed for three independent reasons: (1) Caliri did not act lawfully **[*19]** in acquiring the information that he reported as required by the Act; (2) he did not provide the information to assist in an investigation as required by the Act; and (3) he did not report the information to a person with supervisory authority as required by the Act.

The Act makes it unlawful to retaliate against an employee: (1) "because of any lawful act done by the employee;" (2) if the employee provides information "in an investigation;" and (3) that information is provided to "a person with supervisory authority over the employee . . . ." *18 U.S.C. § 1514A(a)*.

Caliri alleges that he lawfully, in the course of his employment and in the scope of his duties, accessed the network data. The amended complaint states that Caliri met with Willis to register a complaint with regard to Vie's violations of NASD licensing requirements and to assist Willis in conducting an investigation regarding those violations. It further states that Willis reported Caliri's concerns to individuals with supervisory authority over both plaintiffs, Price and Uchimoto. The amended complaint sufficiently alleges that Caliri caused information to be provided to persons with supervisory **[*20]** authority over him.

B. Wrongful Discharge Claims

In order to make out a common law claim for wrongful discharge in Pennsylvania, the plaintiff must allege a violation of a public policy of Pennsylvania. This public policy exception to the general rule that an employer may

---

[8] However, to afford the appropriate administrative body a final chance to resolve the matter, the claimant must provide 15 days notice of his or her intention to proceed with a lawsuit. *29 C.F.R. § 1980.114(b)*. This notice requirement is further evidence that Congress intended Sarbanes-Oxley claims to be resolved through the administrative process whenever possible, thus underscoring the importance of administrative exhaustion to the statutory scheme.

terminate an employee for any reason is a narrow one. Federal law does not identify the state's public policy. Pennsylvania's public policy is determined by examining precedent within Pennsylvania, including the state constitution, court decisions, and Pennsylvania statutes. See *McLaughlin v. Gastrointestinal Specialists, Inc., 561 Pa. 307, 750 A.2d 283, 288-89 (Pa. 2000)*.

The plaintiffs' amended complaint does not identify a Pennsylvania policy which has been violated. The Court will dismiss this claim as to both plaintiffs.

An appropriate Order follows.

ORDER

AND NOW, this 6th day of August, 2004, upon consideration of the defendant's Motion to Dismiss (Docket No. 12), the responses thereto, and following a hearing on June 16, 2004, IT IS HEREBY ORDERED that the motion is GRANTED in part and DENIED in part for reasons set forth in a memorandum of today's date as follows:

1. The motion **[*21]** is GRANTED with respect to Willis's claim under the Sarbanes-Oxley Act based on the termination.

2. The motion is DENIED with respect to Willis's claim under the Sarbanes-Oxley Act based on the threat of termination and the loss of job responsibilities and Caliri's claim under the Sarbanes-Oxley Act.

3. The motion is GRANTED with respect to the plaintiffs' claims for wrongful discharge.

BY THE COURT:

MARY A. MCLAUGHLIN, J.

---

End of Document