LexisNexis

**User Name:** Jessica Mazzeo
**Date and Time:** Wednesday, October 21, 2026 10:55 PM EDT
**Job Number:** 299649079

## Document (1)

1. *Fraser v. Fiduciary Trust Co. Int'l*

**Client/Matter:** 669407
**Search Terms:**
**Search Type:** Natural Language
**Narrowed by:**

| Content Type | Narrowed by |
| --- | --- |
| | -None- |

# Fraser v. Fiduciary Trust Co. Int'l

United States District Court for the Southern District of New York

June 23, 2005, Decided; June 23, 2005, Filed

04 Civ. 6958 (RMB) (GWG)

**Reporter**
2005 U.S. Dist. LEXIS 48059 *

GREGORY A. FRASER, Plaintiff, - against - FIDUCIARY TRUST COMPANY INTERNATIONAL, FRANKLIN RESOURCES INC., MICHAEL MATERASSO, JEREMY H. BIGGS, WILLIAM Y. YUN, CHARLES B. JOHNSON, ANNE M. TATLOCK, GREGORY E. JOHNSON AND MARTIN L. FLANAGAN, Defendants.

**Subsequent History:** Motion granted by, in part, Motion denied by, in part, Claim dismissed by *Fraser v. Fiduciary Trust Co. Int'l, 417 F. Supp. 2d 310, 2006 U.S. Dist. LEXIS 6467 (S.D.N.Y., 2006)*

**Counsel:** **[*1]** For Gregory A. Fraser, Plaintiff: Bruce A. Hubbard, LEAD ATTORNEY, Bruce A. Hubbard, P.C., New York, NY.

For Fiduciary Trust Company International, Franklin Resources Inc., Defendants: David Scott Warner, LEAD ATTORNEY, A Michael Weber, Orit Goldring, Littler Mendelson, P.C. (NYC), New York, NY.

For Michael Materasso, Jeremy H. Biggs, William Y. Yun, Charles B. Johnson, Anne M. Tatlock, Gregory E. Johnson, Martin L. Flanagan, Defendants: David Scott Warner, LEAD ATTORNEY, Littler Mendelson, P.C. (NYC), New York, NY.

**Judges:** Richard M. Berman, U.S.D.J.

**Opinion by:** Richard M. Berman

## Opinion

**DECISION AND ORDER**

### I. Introduction

On or about December 6, 2004, Gregory A. Fraser ("Plaintiff") filed an amended complaint ("Amended Complaint" or "Compl.") against Fiduciary Trust Company International ("Fiduciary"), Franklin Resources Inc. ("Franklin"), Michael Materasso ("Materasso"), Jeremy H. Biggs ("Biggs"), William Y. Yun ("Yun"), Charles B. Johnson, Anne M. Tatlock, Gregory E. Johnson, and Martin L. Flanagan (collectively, "Defendants").[1] Plaintiff asserts, inter alia: (i) securities law claims pursuant to Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), *15 U.S.C. § 78(j)(b)*, and *Rule 10b-5* promulgated **[*2]** thereunder, *17 C.F.R. § 240.10b-5*, *California Corporations Code § 25402*, and Section 20(a) of the Exchange Act, *15 U.S.C. § 78t*, arising out of Defendants' alleged overstatement of Fiduciary's assets under management ("AUM"); (ii) whistleblower claims pursuant to Section 806 of the Sarbanes-Oxley Act of 2002 ("SOX"), *18 U.S.C. § 1514A*, and *Section 510* of the Employee Retirement Income Security Act ("ERISA"), *29 U.S.C. § 1140*, arising out of Plaintiff's termination from his position as a vice president at Fiduciary allegedly "in retaliation for his repeated notices and complaints sent to his supervisors about a continuous pattern of fraudulent business practices;" and (iii) racial discrimination claims pursuant to Title VII of the Civil Rights Act of

[1] The individual defendants are herein referred to as the "Individual Defendants."

1964, *42 U.S.C. § 2000e et seq.*, *42 U.S.C. § 1981*, the New York State Human Rights Law, *N.Y. Exec. L. §§ 290 et seq*., and the New York City Human Rights Law, *N.Y.C. Admin. Code §§ 8-101 et seq*., arising out of Defendants' alleged discriminatory treatment of Plaintiff on the basis of his race (African American). (See Compl. ¶¶ 2-9, 147-80, 191-96.) Plaintiff also asserts a claim for common law breach of contract for "violation of Fiduciary's **[*3]** Policy Manual." (*Id.* ¶¶ 181-90.)

On January, 28, 2005, Defendants moved to dismiss the Amended Complaint pursuant to *Fed. R. Civ. P. 12(b)(6)*. (See Defendants' Memorandum of Law, dated January 28, 2005 (Defs.' Mem.").) On February 25, 2005, Plaintiff filed an opposition. (See Plaintiff's Memorandum of Law in Opposition, dated February 25, 2005 ("Pl. Mem.").) Defendants filed a reply on March 11, 2005. (See Defendants' Reply Memorandum of Law, dated March 11, 2005 ("Defs.' Reply").)

**For the reasons set forth below, the Court grants in part and denies in part Defendants' motion to dismiss**.

**II. Background**

For the purposes of this motion, the allegations of the Amended Complaint are taken as true. See *Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998)*.

Fiduciary, which provides "private banking, trust, custody and investment management services," is a wholly-owned subsidiary of Franklin, "a global investment management and advisory services company." (Compl. ¶¶ 16-17.)[2] "Franklin is a company with a class of securities registered under *Section 12* of the [Exchange Act]," and it and Fiduciary are registered with **[*4]** the United States Securities and Exchange Commission ("SEC") as Investment Advisers. (*Id.* ¶ 17.) Plaintiff alleges, among other things, that "Franklin has misrepresented and overstated its true [AUM] to shareholders, investors and clients" by improperly including a $16 billion United Nations Pension Fund Account ("U.N. Pension Fund") in Fiduciary's AUM even though Fiduciary "does not actually manage and does not receive the economic equivalent fee for advisory services rendered" for this account. (*Id.* ¶¶ 42, 44.)

Plaintiff commenced employment with Fiduciary on October 2, 2000 "as a Vice President responsible for analysis of corporate fixed income investments, and assigned to the Institutional Investment Management Group." (*Id.* ¶ 118.) Plaintiff alleges, among other things, that during his employment at Fiduciary, "Plaintiff was subjected to slurs and stereotypes," denied promotions which were given instead to less qualified, non-minority employees, and retaliated against for voicing his complaints. (See id. ¶¶ 121-25, 128, 134.)

Plaintiff also alleges four "instances" in which he "blew the whistle" on Fiduciary's alleged **[*5]** fraudulent business practices. In December 2001, Plaintiff sent e-mails to Biggs, Fiduciary's Chief Investment Office, identifying Michael Rohwetter ("Rohwetter"), Plaintiff's supervisor, as responsible for "the relatively poor performance" across certain accounts and "suggest[ing] the large losses . . . could have been avoided if Rohwetter had heeded Plaintiff's advice for investment strategy." (*Id.* ¶ 76 ("First Instance").) After this "disclosure," Rohwetter retaliated with "negative behavior" and Plaintiff sent a confidential memorandum ("Confidential Memo") to Fiduciary's Human Resources Department, which "spoke of how Rohwetter wanted Plaintiff to conceal and falsify the actual year end performance results and characteristics for the high yield component of client portfolios in communication reports to clients." (*Id.*)[3] In May 2002, Plaintiff sent a "notice" to Yun, Fiduciary's President, informing him that Rohwetter had prevented Plaintiff from notifying Fiduciary's Los Angeles office of the New York office's decision to sell WorldCom bonds, resulting in losses to accounts managed by the Los Angeles office. (See id. ¶ 77 ("Second Instance").) "After" this notice, Rohwetter and **[*6]** Materasso, also Plaintiff's supervisor, retaliated with "negative behavior." (See id.) "[O]ne to two weeks before Plaintiff's . . . termination" on March 7, 2003, Plaintiff showed to Materasso

[2] Franklin acquired Fiduciary on April 10, 2001. (Compl. ¶ 16.)

[3] Plaintiff defines "negative behavior" as follows: "reduced his responsibilities, less opportunities for career advancement, unnecessary criticism of Plaintiff's work, less recognition and exposure to senior management, less social and less friendly." (Compl. ¶ 76, 77.)

documents concerning the inclusion of the U.N. Pension Fund in Fiduciary's AUM, told Materasso that "Fiduciary's reported AUM for the U.N. account appears overstated" because Fiduciary did not act as a "discretionary manager" of the fund and Fiduciary's fee was below industry standards, and asked "why this was the case and for what services was the U.N. paying Fiduciary." (See id. ¶ 79 ("Third Instance").) Materasso "did not respond to Plaintiff's disclosure . . . or answer Plaintiff's question," which had made Materasso "uneasy." (*Id.*) "On March 6, 2003, . . . Plaintiff sent an e-mail to Materasso, Edward Eisert (Corporate General Counsel) and Yun . . . to inform senior management that investment performance had suffered because the New York office failed to implement a recommendation [Plaintiff] proposed on November 1, 2002 to establish a long/short high-yield investment fund for Fiduciary clients." (*Id.* ¶ 80 ("Fourth Instance").) "Plaintiff argued that if Fiduciary had established a high-yield **[*7]** fund shortly after he submitted his proposal, the investment strategy would have provided much needed diversification benefits to Fiduciary's clients," and so Fiduciary "failed to balance investment return with risk . . . ." (*Id.*) "Later that day, Fiduciary retaliated against Plaintiff . . . by falsely charging him with violating company policy . . . ." (*Id.*)

On March 7, 2003, Fiduciary terminated Plaintiff's employment allegedly based upon "fabricated allegations that Plaintiff engaged in the launch and marketing of a [hedge] fund with outside investors through offering of securities and solicitation of Fiduciary clients without prior approval and/or authorization from Fiduciary management and against company policy." (*Id.* ¶ 144.) Plaintiff "was replaced with a less qualified, less experienced non-minority white employee . . . ." (*Id.* ¶ 138.)

On May 24, 2003, Plaintiff filed a whistleblower complaint with the Occupational **[*8]** Safety And Health Administration ("OSHA"). (*Id.* ¶ 6.) Plaintiff, subsequently, sought to withdraw this complaint, and, on January 23, 2004, an Administrative Law Judge granted Plaintiff's motion, "permitting Plaintiff to pursue his claims in the U.S. District Court . . . ." (*Id.* ¶¶ 6-7; see also Amended Order of Dismissal, dated January 23, 2004, attached as Exhibit A (but referred to as Exhibit C) to Affirmation of Bruce A. Hubbard ("Hubbard Aff."), dated February 25, 2005 ("[T]here being no issuance of a final decision by the Secretary of Labor within 180 days of Complainant's May 23, 2003 filing of his complaint, and no showing that such delay is due to the bad faith of complainant . . . it is hereby ordered, that this matter, nunc pro tunc, be and same is dismissed . . . .").)

On October 17, 2003, Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") alleging racial discrimination. (Compl. ¶ 6.) On May 26, 2004, the EEOC issued a "Right to Sue" letter, in which it checked boxes indicating "More than 180 days have passed since the filing of this charge" and "The EEOC is terminating its processing of this charge." (See id. ¶ 1; Notice **[*9]** of Right to Sue, dated May 26, 2004, Hubbard Aff. Ex. A (but referred to as Ex. C).)

### III. Legal Standard

"In reviewing a *Rule 12(b)(6)* motion, this Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." *Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996)*; accord *Willis v. Vie Fin. Group, Inc., No. Civ.A. 04-435, 2004 U.S. Dist. LEXIS 15753, 2004 WL 1774575, at *2 n.3 (E.D. Pa. Aug. 6, 2004)*. Dismissal of the complaint is proper when "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*; see also *Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)*. "The issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims.'" *Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995)* (citation omitted).

A complaint is deemed to "include . . . documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)*.[4]

**IV. Analysis**

**A. Securities Law Claims**

**1. Section 10(b) and *Rule 10b-5***

Defendants argue, among other things, that Plaintiff's securities fraud claim fails because he has not "sufficiently plead a purchase or sale [of securities] with the particularity required by *FRCP 9(b)*," and because he "does not adequately plead that he was a purchaser or seller" of securities because his alleged participation in a benefit plan is inadequate to establish standing absent "an independent, bargained-for exchange in which Plaintiff himself made an affirmative investment decision . . . ." (Defs.' Mem. at 14 (emphasis omitted).)

Plaintiff responds that he "actually independently purchased and sold the securities of [Franklin] during the relevant period" and "independently and individually acquired through the Collective Domestic Stock Fund - TRIO PLAN (which is ERISA qualified) Franklin Shares." **[*11]** (Pl. Mem. at 7.) Plaintiff also argues that his acquisition of Franklin shares through Defendants' payout of stock in an attempt to retain employees after Franklin purchased Fiduciary "was an affirmative purchase decision on the part of the Plaintiff, resulting directly from his decision to remain with the Company." (Pl. Mem. at 21-23 (emphasis omitted).)

Only an actual purchaser or seller of securities has standing to bring suit under *Section 10(b)* and *Rule 10b-5*. See *Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 749-55, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975)*; *Birnbaum v. Newport Steel Corp., 193 F.2d 461, 462-63 (2d Cir. 1952)*. While Plaintiff alleges generally that he acquired Franklin common stock, (see Compl. ¶ 157 ("Defendants' materially false and misleading statements during the Relevant Period [i.e. 'from July 2000 until December 31, 2003'] resulted in Plaintiff . . . purchasing or acquiring [Franklin] common stock . . . at artificially inflated prices;" "During the Relevant Period, Plaintiff acquired Franklin common stock;" "Plaintiff has in his possession a proxy statement containing the registration numbers and total number of Franklin common shares owned by Plaintiff. Plaintiff also has brokerage **[*12]** account statements in his name showing the acquisition of certain Franklin shares.")), he fails to allege the date(s) on which he acquired stock, the number of shares acquired, or the consideration given (if any). Nor does he allege that he ever sold this stock. Accordingly, Plaintiff has not sufficiently pled a purchase or sale of securities with the particularity required by *Fed. R. Civ. P. 9(b)*. See *Tannenbaum v. Walco Nat'l Corp., No. 83 Civ. 6815, 1984 U.S. Dist. LEXIS 20049, 1984 WL 2374, at *2 (S.D.N.Y. Jan. 27, 1984)* (holding that, where plaintiffs alleged generally that they "purchased the common stock of Walco National Corporation prior to August 12, 1982" and purchased stock after November 1977 but prior to public disclosure of alleged misrepresentations, Section 10(b) claim must "fail for a lack of specifics as to the precise dates of purchase, the number of shares acquired, and the price"); *Gross v. Diversified Mortgage Investors, 431 F. Supp. 1080, 1088 (S.D.N.Y. 1977)* ("[T]he plaintiff has failed to plead the nature and amount of securities purchased and the specific dates of the transactions as required by *Rule 9(b)*."). Further, "[w]hen an employee does not give anything of value for stock other **[*13]** than the continuation of employment nor independently bargains for . . . stock, there is no 'purchase or sale' of securities." *In re Cendant Corp. Sec. Litig., 81 F. Supp. 2d 550, 556 (D. N.J. 2000)* ("In re Cendant") (internal quotation omitted); see also *Int'l Bhd. of Teamster, Chauffeurs, Warehousmen & Helpers of Am. v. Daniel, 439 U.S. 551, 558-59, 99 S. Ct. 790, 58 L. Ed. 2d 808 (1979)* (holding that Exchange Act does not apply to noncontributory, compulsory pension plan); *In re Enron Corp.*

---

[4] Surprisingly, both Defendants and Plaintiff **[*10]** have submitted documents that are outside of the pleadings. The Court declines to convert the instant motion into one for summary judgment, see *Ansonia Tenants' Coalition, Inc. v. Ansonia Assocs., 163 F.R.D. 468, 470 (S.D.N.Y. 1995)*, and has considered only those documents which are explicitly referenced in this Order.

*Sec., Derivative & "ERISA" Litig., 284 F. Supp. 2d 511, 641 (S.D. Tex. 2003)* ("A grant of stock under an Employee Stock Ownership Plan or similar stock bonus program is generally not a 'sale'" for the purposes of the federal securities laws).

Plaintiff appears to allege that he acquired Franklin common stock through several employee stock or benefit plans while employed by Fiduciary. (See Compl. ¶¶ 155, 157 ("Plaintiff continues to be a shareholder of Franklin common stock as a participant in TIAA-CREF's and SunTrust Banks' Retirement Plans;" "During the Relevant Period, Plaintiff acquired Franklin common stock through Franklin's Employee Restricted Stock Award Plan").) Plaintiff does not allege that he gave any consideration **[*14]** in exchange for Franklin stock under these plans other than continued employment. See *In re Cendant, 81 F. Supp. 2d at 556-57* ("[I]t appears from the complaint that [plaintiffs'] compensation remained the same [and] that, at most, these employees 'sold' their labor primarily to obtain a livelihood, not to make an investment.") (citing *Daniel, 439 U.S. at 560*); *Bauman v. Bish, 571 F. Supp. 1054, 1064 (N.D. W. Va. 1983)* (finding no purchase or sale where "[i]nstead of giving up some tangible and definable consideration, participants [in the employee stock ownership plan] earn stock through labor for the employer. The notion that the exchange of labor will suffice to constitute the type of investment which the Securities Acts were intended to regulate was rejected in *Daniel[, 439 U.S. at 559-61]*."). And, Plaintiff does not allege that he specifically bargained with Fiduciary for this stock in exchange for his employment, or that his acquisition of Franklin stock through these plans resulted from a voluntary investment decision. See *In re Cendant, 81 F. Supp. 2d at 557-58* ("Where an employee . . . acquires the right to [stock] options as part of his or her bargained-for compensation, courts **[*15]** will infer that the employee made an intentional decision to 'purchase' the options.") (citing *Yoder v. Orthomolecular Nutrition Inst., Inc., 751 F.2d 555, 560 (2d Cir. 1985)* (finding standing where stock was explicitly bargained for in exchange for employment)); *Childers v. Northwest Airlines, Inc., 688 F. Supp. 1357, 1363 (D. Minn. 1988)* ("Plaintiffs' participation was an incident of employment and their only choice would have been to forego the receipt of benefits entirely.").[5]

### 2. California Securities Claim

Plaintiff alleges that Defendants violated California's insider trading law, *California Corporations Code §§ 25402* and *25502*, for the same reasons they violated federal securities law. (See Compl. **[*16]** ¶ 156.) But Plaintiff fails to allege that any purchase or sale of securities occurred in California. See *Diamond Multimedia Sys., Inc. v. Superior Court, 19 Cal. 4th 1036, 80 Cal. Rptr. 2d 828, 968 P.2d 539, 549-50 (Cal. 1999)* ("[S]ection 25402 provides that it is unlawful for an issuer or insider 'to purchase or sell any security of the issuer in this state . . . .'") (emphasis in original) (quoting *Cal. Corp. Code § 25402*).

### 3. Controlling Person Liability

Because the Court is dismissing Plaintiff's *Section 10(b)* and *Rule 10b-5* claim, the Court also dismisses Plaintiff's claim for controlling person liability pursuant to Section 20(a) of the Exchange Act. See *Salinger v. Projectavision, Inc., 972 F. Supp. 222, 235 (S.D.N.Y 1997)* ("[B]ecause the plaintiffs' *§ 10(b)* and *Rule 10b-5* claim fails, the plaintiffs' claim for controlling person liability is dismissed."); see also *15 U.S.C. § 78t*.

### B. Whistleblower Claims

---

[5] Because Plaintiff has not adequately pled standing to sue, the Court need not decide whether he has pled sufficiently the elements of a securities fraud claim. See, e.g., *Crane Co. v. American Standard, Inc., 603 F.2d 244, 253 (2d Cir. 1979)* ("Because of our disposition of the issue of standing, we need not decide whether the district court properly determined that Crane was not entitled to any relief on the *§ 9(e)* and § 10(b) claims by reason of deficiency of proof of causation.").

### 1. SOX Whistleblower Claim

In the absence of caselaw interpreting 18 U.S.C. § 1514A ("Section 806"), courts "look to caselaw applying provisions of other federal whistleblower statutes for guidance," including the Energy Reorganization Act of 1974, 42 U.S.C. § 5851 ("ERA"). Collins v. Beazer Homes USA, Inc., 334 F. Supp. 2d 1365, 1374 (N.D Ga. 2004).[6] **[*17]** Administrative decisions from the United States Department of Labor also "may provide some guidance," but courts must be mindful that many of these decisions apply a different standard than federal courts do in deciding pre-trial motions, such as a motion to dismiss for failure to state a claim. See id. at 1374 n.10.

### a. Exhaustion of Administrative Remedies

Defendants argue that Plaintiff's SOX claims against the Individual Defendants must be dismissed "because Plaintiff did not name them in the OSHA proceedings and thus, has not exhausted his administrative remedies." (Defs.' Mem. at 5 n.6; see also Defs.' Reply at 5. n.8.) Defendants also argue that Plaintiff's **[*18]** allegation that his Confidential Memo "spoke of how Rohwetter wanted Plaintiff to conceal and falsify the actual 2001 year end performance results in . . . communications reports to clients" was not raised before OSHA and so "should be disregarded as an after-the-fact concoction designed to salvage this claim from being dismissed a second time . . . ." (Defs.' Mem. at 5 n.9.) Plaintiff responds that "given the de novo nature of this Complaint, it is not necessary for allegations to parallel the DOL/OSHA Complaint." (Pl. Mem. at 14.)

"Before an employee can assert a cause of action in federal court under the Sarbanes-Oxley Act, the employee must file a complaint with [OSHA] and afford OSHA the opportunity to resolve the allegations administratively." Willis, 2004 U.S. Dist. LEXIS 15753, 2004 WL 1774575, at *6; see also 18 U.S.C. § 1514A(b)(1)(A); 29 C.F.R. § 1980.103(c) (delegating responsibility for administering SOX whistle-blowing provision to OSHA); Hanna v. WCI Communities, Inc., 348 F. Supp. 2d 1322, 1325 (S.D. Fla. 2004); Murray v. TXU Corp., 279 F. Supp. 2d 799, 802 (N.D. Tex. 2003). "A person who alleges discharge or other discrimination by any person in violation of [Section 806] may seek relief . . . **[*19]** if [OSHA] has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant, [by] bringing an action at law or equity for de novo review in the appropriate district court of the United States . . . ." 18 U.S.C. § 1514A(b)(1)(B).

A federal district court "can only conduct a 'de novo review' of those [SOX whistleblower] claims that have been administratively exhausted." Willis, 2004 U.S. Dist. LEXIS 15753, 2004 WL 1774575, at *6 (holding that plaintiff's failure to raise a claim in administrative complaint with OSHA precluded pursuing that claim in district court); see also Hanna, 348 F. Supp. 2d at 1324, 1329 (under the "de novo review" provided by SOX, "district courts are able to consider the merits of a plaintiff's whistle-blower [administrative] complaint as if it had not been decided previously") (internal quotation omitted). The parties have not submitted Plaintiff's original OSHA complaint, and Plaintiff has failed to allege (or persuasively argue) that he has satisfied Section 806's exhaustion requirement with respect to his claims against the Individuals Defendants, or with respect to claims arising out of the Confidential **[*20]** Memo. See Murray, 279 F. Supp. 2d at 802 (district court lacks subject matter jurisdiction over Section 806 claim if plaintiff has failed to comply with administrative procedures); see also Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) ("A plaintiff asserting subject matter jurisdiction had the burden of proving by a preponderance of the evidence that it exists.").

---

[6] "The Sarbanes-Oxley Regulations specifically indicate that consideration was given to the regulations implementing the whistleblower provisions of the Wendell H. Ford Aviation Investment Reform Act for the 21st Century ("AIR 21'), 29 C.F.R. § 1979; the Surface Transportation Assistance Act ('STAA'), 29 C.F.R. § 1978; and the Energy Reorganization Act ('ERA'), 29 C.F.R. 24. See 29 C.F.R. § 1980 at 2. Moreover, the legal burdens of proof in Sarbanes-Oxley are taken from AIR 21, 49 U.S.C. § 42121." Collins, 334 F. Supp. 2d at 1374.

**b. Retroactivity**

Defendants argue that the First and Second Instances of whistleblowing "should be dismissed because Plaintiff's alleged [protected activity] and the resulting alleged retaliatory activity (i.e. the 'pattern of negative behavior') occurred before the effective date of SOX" and that "SOX may not be applied retroactively." (Defs.' Mem. at 7 n.11; Defs.' Reply at 5 n.8.) Plaintiff responds that "Sarbanes-Oxley may be applied retroactively since its legal burden is the same under New York State Whistleblower Law, [specifically] *Article 20-C, Sec. 740.2* - *740.5* of the New York State Labor Law;" that the Court should not "look at each Whistleblowing notice in isolation;" and that "Plaintiff's adverse employment action occurred on March 7, 2003, after SOX was passed." (Pl. Mem. at 11-12.)

Section 806 **[*21]** does not appear to have retroactive effect. See *18 U.S.C. § 1514A*; see also *Landgraf v. USI Film Prods., 511 U.S. 244, 280, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994)* (strong presumption against retroactive application unless Congress manifested clear intent to have statute in question apply retroactively). Administrative courts have held that Section 806 does not apply when the alleged adverse employment action occurred before July 30, 2002, i.e. the effective date of SOX. See, e.g., *Lerbs v. Buca Di Beppo, Inc., Case No. 2004-SOX-8, 2004 DOLSOX LEXIS 65, at *24 (Dep't Labor June 15, 2005)*; *Kunkler v. Global Futures & Forex, Ltd., Case No. 2003-SOX-00006, 2003 DOLSOX LEXIS 47 (Dep't Labor Apr. 24, 2003)*. Section 806 does apply "when alleged protected activity predated the Act's implementation but the employer's discriminatory actions post-dated the Act's effective date." *Lerbs, 2004 DOLSOX LEXIS 65, at *24-25* ("[I]t is the date of the adverse personnel action to which adjudicators must look in determining whether the Act applies."); see also *Getman v. Southwest Sec., Inc., Case No. 2003-SOX-00008, 2004 DOLSOX LEXIS 71 (Dep't Labor Feb. 2, 2004)*; *Halloum v. Intel Corp., OALJ Case No. 2003-SOX-0007, 2004 DOLSOX LEXIS 73 (Dep't Labor Mar. 4, 2004)* **[*22]** .[7] The Court finds Lerbs to be persuasive. See *18 U.S.C. § 1514A(a)*; see also *Collins, 334 F. Supp. 2d at 1377* (noting "broad remedial purpose behind Sarbanes-Oxley").

**c. Section 806 Claims**

Defendants argue that "none of [Plaintiff's] four separate alleged SOX violations . . . alleges facts that could fairly be construed as legally protected activity, nor do they raise any inference of retaliation." (Defs.' Mem. at 4-5.) Defendants contend that Plaintiff's complaints only "related to workplace matters." (Def.'s Reply at 3.)[8] Plaintiff responds that he expressed concerns to his supervisors which were "specific to the extent that [they related] to a practice, condition, directive or occurrence . . . . and it is not necessary for a whistleblower to cite a particular **[*23]** statutory or regulatory provision or to establish a violation of such standards." (Pl. Mem. at 11 (internal quotation omitted).)

Section 806 provides that no employer of a publicly traded company:

> may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee--

---

[7] But see *McIntyre v. Merrill Lynch, Case No. 2003-SOX-23, 2004 DOLSOX LEXIS 70, at *24 (Dep't Labor Jan. 16, 2004)* ("I find that Complainant's reporting activity including his appeal to the NASD did not constitute protected activity in that such activity [occurred] prior to the effective date of the Act . . . . Thus any discharge or adverse employment action for said conduct does not violate the Act.").

[8] Defendants have attached the following documents as exhibits to their motion: (i) e-mail between Plaintiff and Biggs, dated December 18 and 19, 2001, attached as Exhibit 1 to Reply Affirmation of Christina L. Feege, dated March 11, 2005; (ii) Memorandum, from Plaintiff to "Gregory A. Fraser's Personnel File, Human Resources," dated January 7, 2002, attached as Exhibit A to Affirmation of Christina L. Feege ("Feege Aff."); (iii) PowerPoint slide listing Fiduciary's largest AUM, Feege Aff. Ex. C; (iv) e-mail from Plaintiff to Yun, et al., dated March 6, 2003, Feege Aff. Ex. D. Plaintiff has confirmed that these documents are explicitly referenced and relied upon in the Amended Complaint. (See Pl.'s Mem. at 9 n.19, 13, 18.)

> (1) to provide information, cause information to be provided, or otherwise assist **[*24]** in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of *section 1341*, *1343*, *1344*, or *1348*, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by--
>
> . . .
>
> (C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct) . . . .

*18 U.S.C. § 1514A(a)(1)*. "[T]he plaintiff must show . . . that [i] she engaged in protected activity; [ii] the employer knew of the protected activity; [iii] she suffered an unfavorable personnel action; and [iv] circumstances exist to suggest that the protected activity was a contributing factor to the unfavorable action." *Collins, 334 F. Supp. 2d at 1374-75* (citing *Stone & Webster Eng'g Corp. v. Herman, 115 F.3d 1568, 1573 (11th Cir. 1997)* (analyzing factors under provisions of ERA); see also *18 U.S.C. § 1514A(b)(2)(C)* (action brought under Sarbanes-Oxley "shall be governed by the legal burdens of proof set forth in *section 42121(b) of title 49, United States Code*."). **[*25]** The following is a discussion of these factors.

**(i) Protected Activity**

Section 806 protects employees who provide information which the employee "reasonably believes constitutes a violation of *section 1341* [fraud], *1343* [wire fraud], *1344* [bank fraud], or *1348* [security fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders . . . ." *18 U.S.C. § 1514A(a)(1)*; see also *Collins, 334 F. Supp. 2d at 1376*. A plaintiff is not required to have specifically identified to his supervisor the code section he believed was being violated. See *Collins, 334 F. Supp. 2d at 1377*. However, "general inquiries . . . do not constitute protected activity." *Bechtel Constr. Co. v. Sec'y of Labor, 50 F.3d 926, 931 (11th Cir. 1995)*; see also *Consol. Edison Co. of New York v. Donovan, 673 F.2d 62 (2d Cir. 1982)* (whistleblower raised concerns about inadequate radiation work permit, possible radioactive dust caused by the sandblasting of the turbine, and lack of management action on safety complaints); Lerbs, 2004 DOLSOX LEXIS 65, at *33-34 ("[I]n order for the whistleblower to be protected by [SOX], the reported information **[*26]** must have a certain degree of specificity [and] must state particular concerns which, at the very least, reasonably identify a respondent's conduct that the complainant believes to be illegal.") (citing *Bechtel, 50 F.3d at 931*). Protected activity must implicate the substantive law protected in Sarbanes-Oxley "definitively and specifically." *American Nuclear Res., Inc. v. United State Dep't of Labor, 134 F.3d 1292, 1295-96 (6th Cir. 1998)*. It is sufficient that "the individuals to whom [the complaints] were addressed understood the serious nature of [the employee's] allegations." *Collins, 334 F. Supp. 2d at 1377-78*.

Plaintiff (generally) alleges that he reasonably believed that Defendants were engaging in conduct in violation of the laws and regulations enumerated in Section 806. (See Compl. ¶ 168 ("Plaintiff reasonably believed the actors were engaging in fraudulent activities that violated: '*Sections 1341*, *1343*, *1344*, or *1348*, or any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders . . .'") (quoting *18 U.S.C. § 1514A(a)(1)*).) Plaintiff also specifies which statutes allegedly were being violated. (See **[*27]** Compl. ¶¶ 76-77, 79-80, 168.) Plaintiff alleges that he reasonably believed that these statutes were being violated at the time of his alleged whistleblowing.[9]

Further, the Court cannot conclude at this stage that Plaintiff's activities described in the Second and Third Instances do not constitute protected activity. (See Compl. ¶¶ 76-79.) See *American Nuclear Res., 134 F.3d at 1295-96*; *Bechtel, 50 F.3d at 931*; *Collins, 334 F. Supp. 2d at 1377-78*; see also *18 U.S.C. § 1514A(a)(1)*. With

---

[9] Several of the laws Plaintiff alleges that he believed Defendants had violated may not be within the scope of Section 806. The Court need not decide that issue at this time.

respect to the First Instance (apart from the Confidential Memo), and the Fourth Instance, Plaintiff has not alleged sufficiently how identifying Rohwetter as responsible for the "relatively poor performance" of certain accounts, which "could have been avoided if Rohwetter had heeded Plaintiff's advice for investment strategy," or informing senior management that the company "failed to balance investment return with risk" because it had not adopted his investment strategy, respectively, may be construed as "blowing the whistle" on **[*28]** corporate fraud or violations of "Federal law relating to fraud against shareholders." See *American Nuclear Res., 134 F.3d at 1295-96*; *Bechtel, 50 F.3d at 931*; see also *18 U.S.C. § 1514A(a)(1)*.

**(ii) Employer "Awareness" of Protected Activity**

Plaintiff states that he provided information to his supervisors about alleged "fraudulent business practices," and, therefore, sufficiently alleges that they were aware of his "protected activity." See *Collins, 334 F. Supp. 2d at 1378*.

**(iii) Unfavorable Personnel Action**

Plaintiff alleges he suffered an unfavorable personnel action when he was terminated on March 7, 2003. (See Compl. ¶¶ 79-81.) See *Collins, 334 F. Supp. 2d at 1378* ("Plaintiff suffered an unfavorable personnel action when she was terminated . . . .").[10]

**(iv) Contributing Factor**

A "contributing factor" means "'any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision . . . .'" *Collins, 334 F. Supp. 2d at 1379* (quoting *Marano v. Dep't of Justice, 2 F. 3d 1137, 1140 (Fed. Cir. 1993)* (stating that under Whistleblower Protection Act, *5 U.S.C. § 1221(e)(1)*, "[t]his test is specifically intended to overrule existing case law, which requires a whistleblower to prove that his protected conduct was a 'significant', 'motivating', 'substantial', or 'predominant' factor in a personnel action in order to overturn that action.")).

Plaintiff alleges sufficiently that the Third Instance, which occurred "one to two weeks" before Plaintiff was terminated, was a contributing factor in his termination. See *Collins, 334 F. Supp. 2d at 1374-75, 1379*; see also *Bechtel, 50 F.3d at 934* ("Proximity in time is sufficient to raise an inference of causation."). The Second Instance occurred almost ten months before Plaintiff was terminated. (See Compl. ¶¶ 76-77.) Although **[*30]** Plaintiff alleges that he was terminated in retaliation for all of his whistleblowing activity, (see Compl. ¶ 168 ("Each notice played an important role in the eventual adverse employment action."), he does not allege facts in support of this conclusory allegation.

**2. ERISA Whistleblower Claim**

*ERISA § 510* states in relevant part that, "It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this [Act] . . . ." *29 U.S.C. § 1140*. A plaintiff asserting a whistleblower claim under *ERISA § 510* must allege that he gave information in connection with an "inquiry," see *Nicolaou v. Horizon Media, Inc., 402 F.3d 325, 328-29 (2d Cir. 2005)*, referring broadly to any request for information. Plaintiff has not alleged that he

---

[10] As noted above at Section IV.C.1.b, Plaintiff's allegations that he suffered "negative behavior" in retaliation to the First and Second Instances may not constitute unfavorable personnel actions to the extent such actions occurred before SOX came into effect on July 30, 2002. Plaintiff has failed to allege when such "negative behavior" occurred in relation to each "instance," and the Court is not here determining whether or not the **[*29]** acts about which Plaintiff complains, i.e. reductions in responsibility, etc.. constitute an unfavorable personnel action under Section 806.

provided information concerning ERISA violations in response to an "inquiry," and so, to the extent Plaintiff is asserting a claim under ERISA § 510 for whistleblowing, this claim is dismissed. See id. at 330 ("[I]f Nicolau can demonstrate that she was contacted to meet with Koenigsberg in order to give information **[*31]** about the alleged underfunding of the Plan, her actions would fall within the protection of Section 510.").

### C. Racial Discrimination Claims

In a brief footnote, Defendants argue that the Court "should dismiss those portions of Plaintiff's [claims] for race and color discrimination pursuant to Title VII of the Civil Rights Act of 1964 and New York state law that are time barred" because "an employee must file a charge of discrimination with the EEOC or state [or] local agency within 300 days from the alleged discriminatory act" and/or New York State and New York City's three-year statute of limitations. (Defs.' Mem. at 12 n.14.) Plaintiff responds that he "definitively timely filed and preserved both federal and state law claims for racial and color discrimination based upon the August 2003 filing of his original E.E.O.C. Administrative Complaint and this instant civil action." (Pl. Mem. at 19.)[11] Because the parties have not adequately briefed this issue, Defendants' motion to dismiss portions of Plaintiff's racial discrimination claims is denied (without prejudice). See *Euro Trade & Forfaiting, Inc. v. Vowell, No. 00 Civ. 8431, 2002 U.S. Dist. LEXIS 5385, 2002 WL 500672, at *11 (S.D.N.Y. Mar. 29, 2002)* ("Because **[*32]** of the inadequacy of the briefing on [the issue of whether or not plaintiff had failed to state a claim], the North Cascade defendants' motion as to these two counts is denied without prejudice to renewal upon adequate briefing."); *East Coast Novelty Co. v. City of New York, 781 F. Supp. 999, 1011 n.5 (S.D.N.Y. 1992)* ("The Defendants have failed to brief adequately whether other state law claims are cognizable. Absent a full briefing, the Court will not dismiss [pursuant to *Fed. R. Civ. P. 12(b)(6)*] or grant summary judgment against these claims.").

### D. Breach of Contract

Defendants argue that "New York law does not recognize wrongful termination claims based on the contents of employee handbooks" and **[*33]** an employer's statements of policy "cannot generally be used to create an implied contract of employment . . . ." (Defs.' Mem. at 12.) Plaintiff argues that he has "'pleaded a good cause of action for breach of contract, where he was allegedly discharged without the 'just and sufficient cause' or the rehabilitation efforts specified in defendants personnel handbook and allegedly promised at the time plaintiff accepted the employment.'" (Pl. Mem. at 20) (quoting *Weiner v. McGraw Hill, Inc., 57 N.Y.2d 458, 443 N.E.2d 441, 457 N.Y.S.2d 193 (1982)*). Plaintiff also argues that there existed an "implied-in-law obligation in the relationship [Plaintiff] maintained with Fiduciary and Franklin because Plaintiff's performance of high-level securities analysis for the firm's clients as a Chartered Financial Analyst ('CFA') was central to the relationship with the firm, and Defendants' efforts to thwart his compliance with Fiduciary's standards of conduct and the CFA Institute's Code of Ethics and Standards of Professional Conduct . . . would subvert the core purpose of the relationship with the firm." (Pl. Mem. at 20.)

Under New York law, there exists a strong "presumption that employment for an indefinite or unspecified term **[*34]** is at will and may be freely terminated by either party at any time without cause or notice." *Horn v. New York Times, 100 N.Y.2d 85, 790 N.E.2d 753, 755, 760 N.Y.S.2d 378 (N.Y. 2003)*; see also *Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 448 N.E.2d 86, 91, 461 N.Y.S.2d 232 (N.Y. 1983)* ("[A]bsent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired."). "The only exceptions to the

---

[11] Both Plaintiff and Defendants appear to state in their memoranda of law that the EEOC complaint was filed sometime in August 2003. (See Defs.' Mem. at 12 n.14; Pl. Mem. at 19.) The Amended Complaint, however, alleges that Plaintiff filed a complaint with the EEOC on October 17, 2003. (See Compl. ¶ 8 ("[A] separate and independent Complaint was filed administratively . . . with the U.S. Equal Employment Opportunity Commission, New York District Office, dated October 17, 2003 . . . .").)

employment-at-will rule ever adopted by [the New York Court of Appeals] have involved very specific substitutes for a written employment contract: in *Weiner [v. McGraw Hill, Inc., 57 N.Y.2d 458, 443 N.E.2d 441, 457 N.Y.S.2d 193 (N.Y. 1982)]*, the employer's express, unilateral promise on which the employee relied; in *Wieder [v. Skala, 80 N.Y.2d 628, 609 N.E.2d 105, 593 N.Y.S.2d 752 (N.Y. 1992)]*, the parties' mutual undertaking to practice law in compliance with DR 1-103(a), a rule so fundamental and essential to the parties' shared professional enterprise that its implication as a term in their employment agreement aided and furthered the agreement's central purpose." *Horn, 790 N.E.2d at 759*.

The exception expressed in *Wieder v. Skala* is not applicable here. See *Smith v. AVSC Int'l, Inc., 148 F. Supp. 2d 302, 314 (S.D.N.Y. 2001)* **[*35]** ("New York courts are loathe to imply terms relating to professional ethical obligations in at-will contracts, with the limited exception of lawyers in law firms."); *Wolde-Meskel v. Tremont Commonwealth Council, TCC, No. 93 Civ. 6515, 1994 U.S. Dist. LEXIS 5464, 1994 WL 167977, at *3 (S.D.N.Y. April 29, 1994)* (finding Wieder is "a case in which the holding was carefully limited to the particular circumstances of legal employment."); *Mulder v. Donaldson, Lufkin & Jenrette, 208 A.D.2d 301, 623 N.Y.S.2d 560, 563-64 (N.Y. App. Div. 1995)* (1st Dep't) (holding trial court erred in expanding Wieder "beyond its limited application" to encompass securities dealers).

And, assuming arguendo that Plaintiff had alleged adequately "express limitations," Plaintiff has failed to allege reliance. See *Baron v. Port Auth. of New York & New Jersey, 271 F.3d 81, 85 (2d Cir. 2001)* (holding that "an employee alleging a breach of implied contract must prove that (1) an express written policy limiting the employer's right of discharge exists, (2) the employer (or one of its authorized representatives) made the employee aware of this policy, and (3) the employee detrimentally relied on the policy in accepting or continuing employment."); see also *Mulder, 623 N.Y.S.2d at 564*.

### E. [*36] Other Claims

#### 1. *ERISA § 404*

Defendants argue that Plaintiff has failed to state a claim under *ERISA § 404*, *29 U.S.C. § 1104* because Plaintiff "could not have been damaged by the stock price manipulations he alleges" as he "owned no [Franklin] stock in his retirement plan account." (Defs.'s Mem. at 11-12.) Defendants contend that "at the time [Plaintiff] first became a Participant in the TRIO Plan in October 2001, after the Franklin acquisition of Fiduciary, the plan was not permitted to acquire Franklin Stock . . . ." (Defs.' Mem. at 11.) Plaintiff responds that he did "own Franklin stock in his TRIO Plan prior to his termination and in the relevant period." (Pl. Mem. at 10.)

Defendants rely (solely) upon a document outside of the pleadings, i.e. the Fiduciary Trust Company International Summary Plan Disciplinary TRIO Plan, attached as Exhibit E to Affirmation of Christina L. Feege, dated January 28, 2005, which they assert may be considered by the Court because it is "integral" to Plaintiff's claim. (See Defs.' Mem. at 11 & n.13 (citing *Degrooth v. General Dynamics Corp., 837 F. Supp. 485, 487 (D. Conn. 1993)*.) The Court has not considered this document at this time because there is **[*37]** no indication that Plaintiff relied upon it in drafting his complaint. See *Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)* ("[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion . . . ."); *Degrooth, 837 F. Supp. at 487* (where plaintiffs "conceded that they possessed the [summary of the ERISA plan] which the defendants attached to their motion [and they] demonstrated full knowledge of the contents of the [document]").

#### 2. ERISA Discriminatory Discharge

Defendants argue, among other things: (i) that Plaintiff has failed to "allege that interference with rights under an ERISA plan was 'a motivating factor' in the termination decision, not simply that he lost benefits as a result of his

termination;'" (ii) that he makes only "bald assertions" which "cannot be used to raise the required inference of discrimination;" and (iii) that he has failed to allege "that he lost his right to benefits protected by ERISA" because the stock option or bonus plans at issue are not governed by ERISA. (See Defs.' Mem. at 9-11 & n.12). Plaintiff responds that Defendants' **[*38]** "allegations of cause are fact questions to be determined at trial." (Pl. Mem. at 10.)[12]

*ERISA § 510* states in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

*29 U.S.C. § 1140*.

To state a claim for discriminatory discharge under *ERISA § 510*, a plaintiff must plead that a defendant maintained a plan governed by ERISA and that the defendant terminated the plaintiff with the intent to avoid its obligation to him under the ERISA plan. See *29 U.S.C. § 1140*; *Dister v. Continental Group, Inc., 859 F.2d 1108, 1111-15 (2d Cir. 1988)* (applying burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)* to *ERISA § 510* claim); *Hayles v. Advanced Travel Mgmt. Corp., No. 01 Civ. 10017, 2003 U.S. Dist. LEXIS 23407, 2004 WL 26548, at *12 (S.D.N.Y. Jan. 5, 2004)*. **[*39]** "The fundamental question under *§ 510* . . . is whether the employer acted with the specific intent forbidden by the statute . . . ." *Vallone v. Banca Nazionale Del Lavoro, N.Y. Branch, No. 02 Civ. 6064, 02 Civ. 7102, 2004 U.S. Dist. LEXIS 25252, 2004 WL 2912887, at *2 (S.D.N.Y. Dec. 14, 2004)*.

Plaintiff's allegations that the Individual Defendants "were determined to prevent Plaintiff from receiving existing and future benefits from [certain] ERISA-governed Plans" and that he was terminated "to avoid the payment of contractual benefits" are sufficient to state a claim. (Compl. ¶¶ 164, 169; see also id. ¶ 164 ("Unlike Plaintiff, other] eliminated employees were entitled to received benefits under the above-mentioned ERISA-based Plans. Plaintiff was harmed when he was treated unequally, discriminated against, . . . and denied benefits under these Plans.")); *Vallone, 2004 U.S. Dist. LEXIS 25252, 2004 WL 2912887, at *2*; *Local 812 GIPA v. Canada Dry Bottling Co. of New York and Manhattan Beer Distrib., No. 98 Civ. 3791, 98 Civ. 6774, 1999 U.S. Dist. LEXIS 7174, 1999 WL 301692, at *9 (S.D.N.Y. May 13, 1999)*. And, whether or not the "plans" under which Plaintiff is suing are, in fact, governed by ERISA is a factual inquiry. (See Compl. ¶ 164 (alleging plans "required the use **[*40]** of an administrative scheme to distribute benefits to Plan participants" and are "governed by and administered under ERISA.").) See *Vallone, 2004 U.S. Dist. LEXIS 25252, 2004 WL 2912887, at *3* (holding issue of whether severance plan is protected by ERISA "more appropriately resolved on summary judgment"); see also *Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 11, 107 S. Ct. 2211, 96 L. Ed. 2d 1 (1987)* ("plan" under ERISA must "require[] an ongoing administrative program to meet the employer's obligation"); *Grimo v. Blue Cross/Blue Shield, of Vermont, 34 F.3d 148, 151 (2d Cir. 1994)* ("A 'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.") (internal quotation omitted).

### 3. Exchange Act § 15 and SOX §§ 1102 & 1107

Plaintiff's claims for violations of Section 15 of the Exchange Act and Sections 1102 and 1107 of SOX are dismissed because these statutory provisions do not provide Plaintiff with a private right of action. See *15 U.S.C. §§ 78o(b)(4)(E)* & *(b)(6)*; *18 U.S.C. §§ 1512* & *1513*; see also *Gruntal & Co. v. San Diego Bancorp, No. 94 Civ. 5366,*

---

[12] It is unclear whether Plaintiff's *ERISA § 510* claims are directed against only the Individual Defendants, as they appear to be.

*1996 U.S. Dist. LEXIS 8583, 1996 WL 343079, at *5 (S.D.N.Y. June 21, 1996)* **[*41]** (holding that section 15 of the Exchange Act "does not itself . . . create a private right of action").

**V. Conclusion**

For the reasons stated above, Defendants' motion to dismiss is granted in part and denied in part.

The following of Plaintiff's claims are not dismissed: SOX Section 806 (Third Instance); *ERISA § 510* (discriminatory discharge claim); and all racial discrimination claims. The following of Plaintiff's claims are dismissed without prejudice: Section 10(b) and *Rule 10b-5*; *California Corporations Code § 25402*; Section 20(a); SOX Section 806 (First, Second, and Fourth Instances; all claims against Individual Defendants); *ERISA § 510* (whistleblower claim); *ERISA § 404*; and common law breach of contract claim. The following of Plaintiff's claims are dismissed with prejudice: Section 15 of the Exchange Act; and Sections 1102 and 1107 of SOX.

The Court grants Plaintiff leave to replead and to serve and file a Second Amended Complaint consistent with this Order within thirty (30) days of the date of this Order. Plaintiff's advised to streamline and better organize his current one hundred and ten page complaint, and to employ appropriate paragraph numbering. See *Fed. R. Civ. P. 8(e)* **[*42]** ("Each averment of a pleading shall be simple, concise, and direct.") Upon amending the complaint, Plaintiff is directed to provide the Court and Defendants with a red-lined version, reflecting an changes to the Amended Complaint made pursuant to this Order.

Dated: New York, New York

June 23, 2005

/s/ Richard M. Berman

**Richard M. Berman, U.S.D.J**.

---