# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRITTANY BAKER,**<br>Plaintiff;<br><br>**v.**<br><br>**HORIZON FEDERAL CREDIT UNION, JUSTIN HOWARD, MICHAEL PATTERSON,**<br>Defendants | **Case No. 4:26-cv-02426-MWB**<br>(Hon. Matthew W. Brann)<br><br>**Jury Trial Demanded**<br><br>Filed Electronically |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Plaintiff Brittany Baker ("Ms. Baker"), by and through her legal counsel, Strokoff & Cowden, P.C., hereby files this Brief in Opposition to Defendants' Partial Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF 8)[1] (the "Motion" or "Defendants' Motion") and in response to Defendants' corresponding Brief (ECF 9).

---

[1] All references to docketed documents shall be to their sequence in the ECF/CMS. For example, the Complaint is ECF 1, and so on.

## TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

I. INTRODUCTION .......... 1

II. PROCEDURAL HISTORY .......... 2

III. QUESTIONS PRESENTED .......... 2

IV. LEGAL ARGUMENT .......... 3

A. The Complaint Contains Facts Entitling Ms. Baker to Relief Against Defendant Patterson .......... 4

B. Ms. Baker Stated a Claim of Whistleblower Retaliation Pursuant to Section 806 of the Sarbanes-Oxley Act When She Reported Wrongdoing She Reasonably Believed Constituted a Violation .......... 9

C. Ms. Baker Exhausted the Administrative Remedies Necessary to Include Defendant Howard and Patterson in the Complaint. .......... 16

D. Count III of the Complaint States a Claim Despite Defendants' Hyper-Technical Objections .......... 22

V. CONCLUSION .......... 26

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Admin. Rev. Bd.*,
514 F.3d 468 (5th Cir. 2008)....................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................3, 4

*Blanciak v. Allegheny Ludlum Corp.*,
77 F.3d 690, 698 (3d. Cir. 1996)..........................................22, 23

*Bortz v. Noon*,
556 Pa. 489 (1999)..............................................................22

*Connelly v. Lane Const. Corp.*,
809 F.3d 780 (3d Cir. 2016).............................................3, 4, 9

*Cottom v. Selene Finance LP*,
2025 WL 2375220 (E.D. Pa.)...............................................23, 25

*Ford-Greene v. NHS, Inc.*,
106 F.Supp.3d 590 (E.D. Pa. 2015)..........................................20

*Fought v. City of Wilkes-Barre, Pennsylvania*,
466 F.Supp.3d 477 (M.D. Pa. 2020) .....................................3, 25

*Garrett v. Wexford Health*,
938 F.3d 69 (3d Cir. 2019)........................................................ 4

*Glus v. G.C. Murphy Co.*,
629 F.2d 880 (3d Cir. 1980)....................................................19

*Heller v. CACL Fed. Credit Union*,
775 F.Supp. 839 (E.D. Pa. 1991)..........................................14, 15

*Jaludi v. Citigroup & Co.*,
57 F.4th 148 (3d Cir. 2023)...............................................16, 17

*Johnson v. City of Shelby, Miss.*,
574 U.S. 10 (2014) .......................................................................... 26

*Jones v. Southpeak Interactive Corp. of Delaware*,
777 F.3d 658 (4th Cir. 2015) .......................................................... 18

*Lawson v. FMR LLC*,
571 U.S. 429 (2014) ...................................................................... passim

*McLaughlin v. Rose Tree Media Sch. Dist.*,
1 F.Supp.2d 476 (E.D. Pa. 1998) .................................................... 20

*Schafer v. Bd. of Pub. Educ. of the Sch. Dist. of Pittsburgh, Pa.*,
903 F.2d 243 (3d Cir. 1990) ........................................................... 19

*Sweda v. Univ. of Pa.*,
923 F.3d 320 (3d Cir. 2019)) ............................................................. 4

*Wallace v. Tesoro Corp.*,
796 F.3d 468 (5th Cir. 2015) .................................................... 16, 18

*Wiest v. Lynch*,
710 F.3d 121 (3d Cir. 2013) ......................................... 11, 12, 13, 15

*Willis v. Vie Fin. Grp., Inc.*,
2004 WL 1774575 (E.D. Pa.) ........................................................... 18

**Statutes**

15 U.S.C. § 6805 ............................................................................... 14
18 U.S.C. § 1514A ................................................................ 9, 11, 16, 17
28 U.S.C. § 1367 ............................................................................... 24

**Rules**

Fed. R. Civ. P. 10. ............................................................................... 9
Fed. R. Civ. P. 8 .............................................................................. 4, 9
Local Rule 7.8 .................................................................................... 18

**Regulations**

29 C.F.R. § 1980.103 .................................................................... 7, 17
29 C.F.R. § 1980.104 .................................................................... 5, 17

**Administrative Decisions**

*Krise v. Mgmt. & Training Co.*,
2011 WL 2746260 ........................................................................14, 15

## I. INTRODUCTION

This action involves the retaliatory termination of a whistleblower. Plaintiff, Brittany Baker (hereinafter "Ms. Baker"), filed a 183-paragraph Complaint with over two dozen exhibits to support her claims. She sets forth detailed, specific facts establishing plausible claims against all Defendants. Ms. Baker reported wrongdoing she reasonably believed violated the Sarbanes Oxley Act ("the SOX"). The Complaint states that the Defendants knew about Ms. Baker's reporting and shortly thereafter ended her employment.

The Court's principal inquiry is whether the Complaint avers facts that, taken as true, entitle Ms. Baker to relief. It does. Defendants' Motion asks this Honorable Court to partially dismiss the Complaint by improperly imposing a hyper-technical interpretation of the Federal Rules of Civil Procedure, and an improperly narrow interpretation of the SOX and its administrative exhaustion requirements. Under the SOX's anti-retaliation provisions, Defendants are persons/entities subject to the SOX and may appropriately be held accountable.

For the following reasons, Defendants' Motion must be denied. Should this Honorable Court rule otherwise, Ms. Baker respectfully requests an opportunity to amend her Complaint.

## II. PROCEDURAL HISTORY

Ms. Baker filed the Complaint on August 24, 2026. (ECF 1). Defendants filed the instant Motion and their Brief in support thereof on October 21 and October 22, 2026, respectively. (ECF 8, 9). Ms. Baker's Brief in Opposition now follows.

## III. QUESTIONS PRESENTED

1. Are there sufficient facts in the Complaint to entitle Ms. Baker to relief against Defendant Patterson?
   **Suggested Answer: Yes.**

2. Did Ms. Baker state a plausible claim of retaliation against Defendants pursuant to the Sarbanes-Oxley Act?
   **Suggested Answer: Yes.**

3. Did Ms. Baker exhaust her administrative remedies with respect to Defendants Howard and Patterson?
   **Suggested Answer: Yes.**

4. Has Ms. Baker satisfied federal pleading standards with respect to the claim of misrepresentation in Count III?
   **Suggested Answer: Yes.**

## IV. LEGAL ARGUMENT

The standard of review for a Rule 12(b)(6) motion has been well-developed. Ms. Baker need not aver "detailed factual allegations," only factual averments, ". . .accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citations omitted). Facial plausibility is found in ". . . factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Put another way, Ms. Baker must have ". . .'simply call[ed] for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). Critically, it is important that "plausibility" is not conflated with "probability." *Iqbal*, 556 U.S. at 678. This Honorable Court's review is not limited to the four corners of the Complaint and must also consider attached exhibits. *See, e.g., Fought v. City of Wilkes-Barre, Pennsylvania*, 466 F.Supp.3d 477, 490–91 (M.D. Pa. 2020) (citations omitted).

Ms. Baker addresses each of Defendants' arguments *seriatim*.

### A. The Complaint Contains Facts Entitling Ms. Baker to Relief Against Defendant Patterson.

The pleading demands of Rule 8 are not onerous: "[e]ach allegation must be simple, concise, and direct. No technical form is required." Fed. R. Civ. P. 8(d)(1). Rule 8 permits pleading claims/defenses in the alternative, as well as pleading inconsistent claims/defenses. Fed. R. Civ. P. 8(d)(2)–(d)(3). As stated *supra*, the sufficiency of a pleading requires factual averments that, if taken as true, raise the "reasonable expectation" that discovery will produce evidence supportive of the plaintiff's claims. *Connelly*, 809 F.3d at 789; *see also Iqbal*, 556 U.S. at 678 (establishing the "plausibility" standard and warning against conflation with "probability.") The Third Circuit also ruled that "judging the sufficiency of a pleading is a context-dependent exercise." *Garrett v. Wexford Health*, 938 F.3d 69, 93 (3d Cir. 2019) (citing *Sweda v. Univ. of Pa.*, 923 F.3d 320, 326 (3d Cir. 2019)).

To state a whistleblower claim under Section 806 of the SOX, a plaintiff must allege (1) that they engaged in protected activity; (2) the defendant knew or suspected that the plaintiff engaged in protected activity; (3) the employee suffered an adverse

action, e.g., termination of employment; and (4) the circumstances of the adverse action are sufficient to raise the inference that the protected activity was a contributing factor in the defendant's adverse action. *See* 29 C.F.R. § 1980.104(e)(2)(i)–(iv).

The Complaint identifies Defendant Michael Patterson ("Patterson") as Defendant Horizon Federal Credit Union's ("Horizon") Chief Branding Officer ("CBO") and as Horizon's chief human resources manager. (ECF 1 ¶¶ 7–8). The Complaint states that Patterson collaborated with the chief executive officer ("CEO") Defendant Justin Howard ("Howard") in decisions regarding Ms. Baker's employment with Horizon, including but not limited to unlawful retaliation against Ms. Baker. (*Id.* ¶¶ 9–10).

The Complaint identifies Patterson as responsible for the promulgation of Horizon's Whistleblower Policy ("Policy"). (*Id.* ¶ 169). Accordingly, Patterson's conduct as chief human resources manager and the architect of the Policy implicates him in over a dozen averments concerning Defendants' failure to respond, investigate, acknowledge, and/or abate retaliation against Ms. Baker. (*Id.* ¶¶ 10, 94, 122–23, 139–41, 147, 151, 153–55, 158, 164–66, 174, 178–80).

Patterson is also repeatedly implicated in the exhibits attached to the Complaint. Ms. Baker created a timeline of specific whistleblowing events that was provided to the Occupational Safety and Health Administration ("OSHA") investigator before he crafted the OSHA complaint. (ECF 1-3). It paints a clear picture of Patterson's involvement. For example, the timeline entry on February 1, 2025, states that Ms. Baker reported Horizon's regulatory non-compliance to Horizon's "CBO/HR," i.e., Patterson. (*Id.*) Ms. Baker made similar reports to Patterson on February 4–5 and 25, 2025, and May 7, 2025. (*Id.*)

Ms. Baker also submitted a Sworn Statement to the OSHA investigator before he crafted the OSHA complaint. (*See* ECF 1-26). The Sworn Statement describes Patterson as present during Horizon's February 4, 2025, Senior Management Meeting wherein Ms. Baker reported Horizon's PCI-DSS noncompliance. (ECF 1-26 at 3[2]; *see also* ECF 1 ¶¶ 60–68, 70–71, 77–79, 89–91; ECF 1-13 (Compl. Exh. L)).

---

[2] Pincite page references to ECF documents are made using the ECF header and corresponding page count.

The OSHA investigator created Ms. Baker's administrative complaint after receiving the above-described materials. Among other things, the OSHA complaint written by the investigator states that ". . .she notified *multiple executive level Respondents* via email of potential SOX violations." (ECF 1-2).[3] (emphasis added).

Patterson also appears in Defendants' submissions to the OSHA investigator. Indeed, Defendants prepared a written response to the OSHA complaint and attached a copy of Horizon's Policy. (*See* ECF 1-5, Compl. Exh. D, at 3, 17; *see also* ECF 1-18, Compl. Exhibit Q). The Policy explicitly implicates Human Resources, i.e., Patterson, because the Policy directs employees who allege retaliation for whistleblowing activity to Human Resources. The Policy states that Human Resources is "**<u>responsible for investigating and coordinating corrective action.</u>**" (ECF 1-18) (emphasis in original). Importantly, the information supplied by Defendants during the investigation undeniably connect the

---

3 *See* 29 C.F.R. § 1980.103(b) (stating that OSHA is responsible for reducing oral complaints to writing).

conduct of Human Resources, i.e., Patterson to Ms. Baker's complaint. (*See* ECF 1-5 at 3, 17). The instant Complaint incorporates Defendants' various admissions during the investigation that unquestionably provide Patterson with fair notice of the claims against him and the grounds upon which Ms. Baker's retaliation claims rest.

Patterson was present during at least one meeting wherein Ms. Baker blew the whistle on Horizon's noncompliance. (ECF 1-26 at 3; *see also* ECF 1 ¶¶ 60–68, 70–71, 77–79, 89–91; ECF 1-13). At a minimum, Patterson failed to take Ms. Baker's concerns seriously and failed to shield her pursuant to Horizon's Policy. (ECF 1 ¶¶ 9–10, 89–92, 94, 122–23, 139–41, 147, 151, 153–55, 158, 164–66, 174, 178–80). The Complaint describes Ms. Baker as the subject of Defendants' ire but she was not privy to Howard and Patterson's retaliatory scheming. A reasonable inference can be drawn that Patterson had a more *explicit* role in retaliating against Ms. Baker, given his position as Horizon's chief of human resources manager and his ultimate responsibility for enforcing Horizon's whistleblower protections. That inference can be readily developed through discovery.

As Defendants would have it, Ms. Baker would need to identify Patterson *with specificity and particularity* in every averment associated with his conduct. Inserting superfluous averments in an 183-paragraph Complaint is unnecessary and would conflict with the emphasis on concision established by Federal Rules of Civil Procedure 8 and 10. *See* Fed. R. Civ. P. 8; *see also* Fed. R. Civ. P. 10. Moreover, that is not the standard. Despite Defendants' assertions to the contrary, Ms. Baker has averred enough facts that, taken as true, "raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Connelly*, 809 F.3d at 789. For this reason, Defendants' Motion must fail, and all claims against Defendant Patterson must survive.

### B. Ms. Baker Stated a Claim of Whistleblower Retaliation Pursuant to Section 806 of the Sarbanes-Oxley Act When She Reported Wrongdoing She Reasonably Believed Constituted a Violation

The SOX was enacted in 2002 to promote corporate accountability and *inter alia* to protect employees who report wrongdoing and/or noncompliance. The plain language of the SOX's anti-retaliation provision states that it is applicable to *contractors* of publicly traded companies, among others. *See* 18 U.S.C. § 1514A(a).

Indeed, the Supreme Court of the United States endorsed the plain reading of the statutory text over a decade ago in *Lawson v. FMR LLC*, 571 U.S. 429 (2014) (hereinafter *Lawson*). Writing for the majority, the late Justice Ginsburg warned that a narrow read of the SOX, to the exclusion of such contractors, risks leaving whistleblowers ". . . vulnerable to retaliation by their employers for blowing the whistle on a scheme to defraud the public company's investors, even a scheme engineered entirely by the contractor." *Id.* at 444.

Section 806 provides whistleblower protection to employees who:

> provide information... regarding any conduct which the employee *reasonably believes constitutes a violation* of ... any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by--
>
> (A) a Federal regulatory or law enforcement agency. . .
>
> (C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct) . . .

18 U.S.C. § 1514A(a)(1) (emphasis added). At this stage, Ms. Baker need only state facts establishing that she *reasonably believed* that her employer's conduct "constitutes a violation of an enumerated provision in Section 806." *See Wiest v. Lynch*, 710 F.3d 121, 137 (3d Cir. 2013).

According to the Complaint, Defendant Horizon is a contractor for several publicly traded entities, including Experian plc, TransUnion LLC, Equifax, Inc., and ChexSystems, Inc. (ECF 1 ¶¶ 156.a–156.d). These facts establish more than just a ". . . fleeting business relationship." *Lawson*, 571 U.S. at 453. Ms. Baker specifically avers that Horizon violated its obligations to its members and the public by failing to report ". . . income falsification, loan fraud, negative amortization, governance failures, and systematic failure to disclose adverse credit decisions." She avers that she had a reasonable belief that such omissions and violations risked defrauding the aforementioned publicly traded companies. (ECF 1 ¶¶ 159–160).

Experian, TransUnion, Equifax, and ChexSystems are credit/consumer reporting companies. They rely on financial

institutions—such as Horizon—to accurately report credit and other financial information to them. That is how those companies garner investor confidence and, ultimately, deliver value to their shareholders. Ms. Baker's whistleblowing activity was guided by her reasonable, good-faith belief that Horizon's non-compliance practices resulted in inaccurate information being reported to those very companies. In other words, her whistleblowing speaks directly to Horizon's contracted role, not "some unrelated capacity" as Defendants claim. (ECF 9 at 12) (citing *Lawson*, 571 U.S. at 453).

Neither the SOX nor federal pleading standards require Ms. Baker to *prove* that Defendants actually violated the SOX's proscriptions against shareholder fraud or any other rule or regulation under the SEC's jurisdiction. (*See* ECF 9 at 18). Nor do such standards require Ms. Baker to specifically aver or prove that fraud occurred. Rather, Ms. Baker has pleaded the required elements: she had both a subjective, good-faith belief that a violation occurred, and that her belief was reasonable under the circumstances. *See, e.g.*, *Wiest v. Lynch*, 710 F.3d 121, 132–33 (3d Cir. 2013). Moreover, the Third Circuit has explicitly recognized circumstances where "[a]n employee may not have access to

information necessary to form a judgment on certain elements of a generic fraud claim, such as scienter or materiality, and yet have knowledge of facts sufficient to alert the employer to fraudulent conduct." *Wiest*, 710 F.3d at 134.

Defendants ignore the contractual relationship Horizon has with the companies enumerated in the Complaint. Instead, Defendants operate under the myopic and mistaken impression that the claim cannot survive if Horizon is not a publicly traded company. That is incorrect. That Horizon is not publicly traded is not dispositive.

The Complaint establishes that Ms. Baker blew the whistle on Horizon's compliance violations and/or risks, and pleaded specific, reasonable, good-faith concerns that Horizon's practices, irrespective of its internal standards, violated or risked violating federal regulations undeniably covered by the SOX. (*See* ECF 1 ¶¶, 60–71, 74–77, 77 n.4, 78, 78 n.5, 79, 83–92, 96, 103,

112.).[4] Ms. Baker's concerns were about far more than just Horizon's "internal credit-union compliance failures," despite Defendants' assertions to the contrary. (*See, e.g.*, ECF 9 at 18). Defendants' overly narrow read of the SOX is the very interpretation that Justice Ginsburg cautioned against.

Defendants argue categorically that ". . .a private credit union fails to meet the statutory criteria of an employer subject to SOX." (ECF 9 at 16). In support, Defendants cite a Department of Labor administrative adjudication, *Krise v. Mgmt. & Training Co.*, 2011 WL 2746260 (ECF 9-3), and a 1991 case from the Eastern District of Pennsylvania, *Heller v. CACL Fed. Credit Union*, 775 F.Supp. 839 (E.D. Pa. 1991). Neither are germane to the facts or the law as applied to this matter. *Krise* concerned a whistleblower complaint against a privately held company contracting for the United States government. (ECF 9-3 at 3). The company was not a

---

[4] *See also* ECF 1-3 (Compl. Exhibit B) (reporting several violations of, among other things, the Gramm-Leach Bliley Act of 1999 ("GLBA"), administered in part by the Securities and Exchange Commission ("SEC") pursuant to 15 U.S.C. § 6805, the SOX itself, as well as instances of loan fraud).

contractor for a publicly traded entity nor was it a private credit union. (*See generally* ECF 9-3). Reliance on *Krise* is misplaced.

Similarly, *Heller* predates enactment of the SOX by approximately 11 years.[5] *See generally Heller*, 775 F.Supp. 839. It is both a factual and legal impossibility for *Heller* to apply to a law passed subsequent to its decision.

Defendants' legal arguments do not apply to the facts underlying the Complaint. Importantly, Defendants fail to appreciate that even if Ms. Baker's belief is ultimately mistaken, her claims are still plausibly actionable. *See Wiest*, 710 F.3d at 133 (citing *Allen v. Admin. Rev. Bd.*, 514 F.3d 468, 477 (5th Cir. 2008)). Accordingly, dismissal would be inappropriate at this stage and/or under these circumstances.[6]

---

[5] The SOX was enacted in 2002 in reaction to the disastrous Enron and Worldcom scandal. *See Lawson*, 571 U.S. at 432.

[6] Defendants' contention that Howard and Patterson must be dismissed because their employer, Horizon, is not a covered employer, must fail for similar reasons. (*See* ECF 9 at 18–19). Application of the SOX to Horizon must necessarily apply to Howard and Patterson because they are the executive level decision makers of Horizon. (*See* ECF 1-2; 9 at 19 n.8 and its citation to *Wiest, supra*).

### C. Ms. Baker Exhausted the Administrative Remedies Necessary to Include Defendant Howard and Patterson in the Complaint.

To exhaust administrative remedies, before bringing a whistleblower claim in federal district court, "[a] person averring retaliation in violation of SOX must first file a complaint with the Secretary of Labor. If 180 days pass from the filing of that complaint without a final decision, the complainant can sue." *Wallace v. Tesoro Corp.*, 796 F.3d 468, 475 (5th Cir. 2015) (citations omitted); *see also Lawson v. FMR LLC*, 571 U.S. 429, 436–37 (2014).

Section 1514A(b)(1)(B) of the SOX, aptly named a "kick-out" provision, "lets a party sue in district court if the administrative process drags on too long. This provision implicitly requires exhaustion." *Jaludi v. Citigroup & Co.*, 57 F.4th 148, 152 (3d Cir. 2023).[7] If the complaint is not resolved within 180 days, the whistleblower has met the exhaustion requirement and may "kick-

---

[7] Neither the SOX's time limit nor administrative exhaustion requirements are jurisdictional, and failure to precisely conform to such requirements ". . . do[es] not lock [the courthouse] doors" and may be excused through equitable exceptions. *See Jaludi*, 57 F.4th at 151–53.

out" to federal District Court at any point thereafter. *See, e.g., id.*; *see also* 18 U.S.C. § 1514A(b)(1)(B).

Ms. Baker met both of the exhaustion requirements. She filed her administrative complaint on or about June 11, 2025. (ECF 1 ¶ 12). The investigation took 233 days. (ECF 1 ¶¶ 12, 18).

Neither the SOX nor the Regulations define exhaustion of remedies relevant to specific claims or people. "No particular form of complaint is required. A complaint may be filed orally or in writing...." 29 C.F.R. § 1980.103(b). There are baseline criteria, however. To be investigated, the administrative complaint,

> on its face, supplemented as appropriate through interviews of the complainant, alleges the existence of facts and either direct or circumstantial evidence to ... give rise to an inference that the respondent knew or suspected that the employee engaged in protected activity and that the protected activity was a contributing factor in the adverse action.

29 C.F.R. § 1980.104. In sum, the relevant regulations say nothing about a complainant's obligation to plead any facts with specificity or to name any particular respondents.

Fortunately, numerous courts both in Pennsylvania and in other jurisdictions have applied the exhaustion standard applied

to Title VII claims to determine whether a plaintiff met the exhaustion burden in a SOX complaint.[8] *See, e.g.*, *Willis v. Vie Fin. Grp., Inc.*, 2004 WL 1774575 at *3–4 (E.D. Pa.) (unreported)[9] (analogizing administrative exhaustion requirements in the SOX to those in Title VII); *see also Wallace*, 796 F.3d at 476 (5th Cir. 2015) ("We therefore apply the same exhaustion standard in SOX-retaliation cases: The scope of a judicial complaint is limited to the sweep of the OSHA investigation that can reasonably be expected to ensue from the administrative complaint"); *Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 668–70 (4th Cir. 2015).

Courts in the Third Circuit do not dismiss Title VII complaints out of hand when individual defendants in the civil

---

[8] Defendants cite to a litany of out-of-circuit and/or unreported decisions to support its contention that ". . . a Plaintiff must still exhaust their administrative remedies against individually named defendants, same as against the named employer." (ECF 9 at 20). These cases are not binding on this Honorable Court. (*See* ECF 9 at 20 (citing *Bozeman v. Per-Se Techs., Inc.*, a N.D. Ga. 2006 case), 21 (citing *Smith v. Psychiatric Solutions, Inc.*, an unreported N.D. Fla. 2009 case, not attached); ECF 9-6 (*Fraser v. Fiduciary Tr. Co. Int'l*, an unreported S.D.N.Y. 2005 case).

[9] Defendants also cite to *Willis*, *supra*, and attached it to their Brief at ECF 9-5. Pursuant to Local Rule 7.8(a), the undersigned will not congest the docket with a duplicative filing of the same case.

action were unnamed in the underlying administrative complaint. To the contrary, the Third Circuit "recognizes an exception when the unnamed party received notice and when there is a shared commonality of interest with the named party." *See Schafer v. Bd. of Pub. Educ. of the Sch. Dist. of Pittsburgh, Pa.*, 903 F.2d 243, 252 (3d Cir. 1990) (citing *Glus v. G.C. Murphy Co.*, 629 F.2d 880 (3d Cir. 1980), *vacated on other grounds*, 451 U.S. 935 (1981)).[10]

---

[10] The Court in *Glus* set forth four factors to consider whether the court has jurisdiction over an unnamed defendant (the "*Glus* test.") The *Schafer* Court simplified the verbiage of the *Glus* test. The *Glus* factors are as follows:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;
> 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;
> 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;
> 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.....

*Glus*, 629 F.2d at 880.

Third Circuit courts have found that "where a defendant is not named as a defendant in the caption of the administrative proceeding, but is named in the body of the complaint, that defendant has sufficient notice to satisfy the general rule." *See, e.g.*, *Ford-Greene v. NHS, Inc.*, 106 F.Supp.3d 590, 606 (E.D. Pa. 2015) (citing *McLaughlin v. Rose Tree Media Sch. Dist.*, 1 F.Supp.2d 476, 482 (E.D. Pa. 1998)) (other citations omitted).

Ms. Baker's July 1, 2025, OSHA complaint (ECF 1-2) was prepared and signed by the OSHA investigator, not Ms. Baker herself. She had no effective control over what was put in the body of the complaint—all she could do was provide information to the investigator and hope it accurately stated the claims and identified the wrongdoers. Nevertheless, Ms. Baker's OSHA complaint states, in relevant part, "Complainant alleges she notified *multiple executive level Respondents* via email of potential SOX violations." (ECF 1-2) (emphasis added). Howard and Patterson are Horizon's executives as the CEO and the CBO/chief of human relations, respectively. (ECF 1 ¶¶ 5, 7–8). They are sufficiently named in the body of the complaint to put them on notice. Furthermore, each named

Defendant shares a commonality of interest with the others. All were palpably part of, and integral to, the OSHA investigation.

Moreover, Horizon's submissions to the OSHA investigator clearly reveal its knowledge of the specific individuals implicated in Ms. Baker's complaint. Horizon's administrative response describes Howard's involvement over a dozen times. (*See generally* ECF 1-5). Patterson's conduct was similarly implicated, given Horizon's citation to the Policy that Patterson was responsible for creating and administering. (ECF 1-5 at 3; *see also* Section IV.A at 8, *supra*).

At the administrative level, Defendants took a scattershot approach to justifying their retaliation against Ms. Baker. Their feigned ignorance at this stage lacks credibility. Defendants themselves decided what statements to make and which documents to share with the OSHA investigator. They cannot now credibly claim that they lack sufficient notice or that they suffer prejudice by not being specifically identified by name in the OSHA complaint.

Further, Horizon's interests are so similar to and intertwined with Howard's and Patterson's that it was unnecessary—even if it had been under her control—for Ms. Baker

to include their names in the underlying complaint. For the foregoing reasons, Howard and Patterson belong in the instant action, and Defendants' Motion to remove the named Defendants must fail.

### D. Count III of the Complaint States a Claim Despite Defendants' Hyper-Technical Objections

Under Pennsylvania common law, misrepresentation may be actionable under three theories: intentional misrepresentation, negligent misrepresentation, and innocent misrepresentation. *See, e.g., Bortz v. Noon*, 556 Pa. 489, 499 (1999). A claim of intentional misrepresentation has the following elements: (1) a representation; (2) material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into reliance; (5) the recipient of the misrepresentation justifiably relied on it; and (6) injury proximately caused by the reliance. *See id.* (citations omitted).

Courts in the Third Circuit routinely assess a claim's substance, rather than its form, when determining its viability. *See, e.g., Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d. Cir.

1996) (looking "to the substance rather than the form of the relief requested" to determine whether a Section 1983 claim is barred by the Eleventh Amendment) (citations omitted); *see also Cottom v. Selene Finance LP*, 2025 WL 2375220 at *3–4 (E.D. Pa.) (slip op.)[11] (applying the "gist of the action" doctrine, looking at the substance of the plaintiff's allegations, to differentiate between a claim sounding in tort or contract law) (citations omitted).

Here, Count III of the Complaint avers that Defendants maintained the Policy and attaches it as an exhibit. (ECF 1 ¶ 168; ECF 1-18). It avers, specifically, that Howard and Patterson were the parties responsible to draft, review, approve, enact, implement, and enforce the Policy. (ECF 1 ¶ 169). It details the material representations contained in the Policy. (*Id.* ¶¶ 170–73). The Complaint avers Ms. Baker's reasonable reliance on the Policy's protections. (*Id.* ¶¶ 174). It further avers Howard's misrepresentations to Ms. Baker that Defendants would take appropriate steps, material in her decision(s) to continue engaging in whistleblowing activity. (*Id.* ¶¶ 175–77). It avers Defendants acted

---

[11] A true and correct copy is attached hereto.

contrary to their representations and asserts that Defendants had knowledge or reckless disregard for the falsity of their representations. (*Id.* ¶¶ 178–83). Put another way, Count III avers the requisite (1) representations; (2) that were material to Ms. Baker's decision-making; (3) that Defendants made falsely, with knowledge of their falsity or reckless disregard thereof; (4) that Defendants intended to bait Ms. Baker into relying on the Policy for protection; (5) that it was reasonable and justifiable for Ms. Baker to rely on the Policy's protections; and (6) her reliance on the misrepresentation is proximate cause of her harm. The Complaint has pleaded a claim for intentional misrepresentation.

Defendants claim ignorance as to the source of law underlying Count III. However, the Complaint cites 28 U.S.C. § 1367 for supplemental jurisdiction over Count III. (ECF 1 ¶ 28). Section 1367 is applicable only where this Honorable Court has original jurisdiction already. Given that Counts I and II pertain to federal laws, the supplemental jurisdiction assertion, by elimination, applies to Count III, i.e., Count III arises under Pennsylvania law.

Defendants' asserted basis for dismissal amounts to a demand that "Misrepresentation" be preceded by the word "Intentional" and relies on taking Count III out of context from the rest of the Complaint.[12] The Complaint is to be read as a whole, each part in context with the other, and inclusive of any attachments such as exhibits. *See, e.g.*, *Fought*, 466 F.Supp.3d at 490–91 (M.D. Pa. 2020) (citations omitted).

To the extent Defendants raise a Fed. R. Civ. P. 9(b) challenge, the Complaint makes specific allegations concerning ". . . 'the circumstances of the alleged [misrepresentation] with sufficient particularity to place [Defendants] on notice of the precise misconduct,' including the 'time and place of the alleged fraud' or 'some [other] measure of substantiation.'" *Cottom*, 2025 WL 2375220 at *4; *see also* Section IV.A, IV.C, *supra*.

The United States Supreme Court has expressly disaffirmed the kind of hyper-technical objections the Defendants have raised. Moreover, the Court explicitly affirmed the notion that

---

[12] Taking Defendants' argument at face value and in good faith, it is disappointing that, during the parties' pre-motion conference, Defendants did not mention any confusion as to the basis of Count III. That would have been the time to clarify.

the "[]Federal Rules of Civil Procedure 'are designed to discourage battles over mere form of statement'[]" with the basic objective of "avoid[ing] civil cases turning on technicalities." *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11–12 (2014) (citations omitted). Once a plaintiff has pled adequate facts, "they [are] required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." *Id.* at 12. Ms. Baker has met her burden.

## V. CONCLUSION

For the foregoing reasons, Ms. Baker respectfully asks this Honorable Court to deny Defendants' Partial Motion to Dismiss and Order the Defendants to file an Answer. Should this Honorable Court rule to the contrary, Ms. Baker respectfully asks for an opportunity to amend her Complaint.

Respectfully submitted,
**STROKOFF & COWDEN, P.C.**

By: ______________________________
Jennifer A. Nachamkin, Esq.
I.D. No. PA 200931
Jacob I. Toth, Esq.
I.D. No. PA 338504
224 Pine Street
Harrisburg, PA 17101
jnachamkin@strokoffandcowden.com
jtoth@strokoffandcowden.com
Phone: (717) 233-5353
Fax: (717) 233-5806

Date: November 4, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BRITTANY BAKER,**<br>Plaintiff;<br><br>**v.**<br><br>**HORIZON FEDERAL CREDIT UNION, JUSTIN HOWARD, MICHAEL PATTERSON,**<br>Defendants | **Case No. 4:26-cv-02426-MWB**<br>(Hon. Matthew W. Brann)<br><br>**Jury Trial Demanded**<br><br>Filed Electronically |

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this filing complies with the provision of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

By: /s/ Jacob I. Toth

Jacob I. Toth, Esq.
I.D. No. PA 338504
224 Pine Street
Harrisburg, PA 17101

Date: November 4, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BRITTANY BAKER,**<br>Plaintiff;<br><br>**v.**<br><br>**HORIZON FEDERAL CREDIT UNION, JUSTIN HOWARD, MICHAEL PATTERSON,**<br>Defendants | **Case No. 4:26-cv-02426-MWB**<br>(Hon. Matthew W. Brann)<br><br>**Jury Trial Demanded**<br><br>Filed Electronically |

## CERTIFICATE OF SERVICE

The undersigned certifies that on this day, he has served a true and correct copy of the foregoing document to counsel for Defendants via ECF and e-mail addressed to the following:

Timothy M. McCarthy, Esq.
Jessica L. Mazzeo, Esq.
Three Parkway, Suite 1350
1601 Cherry Street
Philadelphia, PA 19102
timothy.mccarthy@jacksonlewis.com
jessica.mazzeo@jacksonlewis.com

By: /s/ Jacob I. Toth
Jacob I. Toth, Esq.
I.D. No. PA 338504
224 Pine St.
Harrisburg, PA 17101

Date: November 4, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BRITTANY BAKER,**<br>Plaintiff;<br><br>**v.**<br><br>**HORIZON FEDERAL CREDIT UNION, JUSTIN HOWARD, MICHAEL PATTERSON,**<br>Defendants | **Case No. 4:26-cv-02426-MWB**<br>(Hon. Matthew W. Brann)<br><br>**Jury Trial Demanded**<br><br>Filed Electronically |

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)**

The undersigned certifies that the foregoing brief complies with the requirements of Local Rule 7.8(b). This brief, not inclusive of the cover page, tables, or accompanying certificates, contains 4816 words. The undersigned relied on the word count feature of his word processor program in reporting the number of words in this brief.

By: /s/ Jacob I. Toth
Jacob I. Toth, Esq.
I.D. No. PA 338504
224 Pine Street
Harrisburg, PA 17101

Date: November 4, 2026