**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRITTANY BAKER,<br><br>Plaintiff<br><br>v.<br><br>HORIZON FEDERAL CREDIT UNION, JUSTIN HOWARD and MICHAEL PATTERSON<br><br>Defendants | : | No. 4:26-cv-02426-MWB |

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. PRO. 12(b)(6)

Respectfully submitted,

**JACKSON LEWIS P.C.**
Timothy M. McCarthy, Esq. (PA 319308)
Jessica L. Mazzeo (PA No. 331227)
Three Parkway, Suite 1350
1601 Cherry Street
Philadelphia, PA 19102
T: (267) 319- 7802
timothy.mccarthy@jacksonlewis.com
jessica.mazzeo@jacksonlewis.com
*Attorneys for Defendants*

Dated: November 18, 2026

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. LEGAL ARGUMENT .......... 3

A. Horizon Is Not A Covered Entity Under SOX, and Count II Fails as to All Defendants .......... 3

1. The Opposition Concedes Horizon is Not a Public Company and Relies Entirely on a Conclusory "Contractor" Theory .......... 3

2. *Lawson* Protects Contractor Employees Who Report Fraud on the Public Company's Shareholders, Which Plaintiff Never Reported .......... 7

3. Plaintiff's Remaining Arguments Do Not Save Count II .......... 9

B. Plaintiff Failed to Exhaust Her Mandatory Administrative Remedies as to Defendants Howard and Patterson .......... 10

1. SOX Requires Plaintiff to Present Her Claim Against Each Respondent to OSHA Before Suing That Respondent .......... 10

2. Plaintiff's OSHA Complaints Named Only Horizon and Never Mentioned Howard or Patterson .......... 12

3. Tite VII's "Commonality of Interest" Exception Does Not Apply, and, In Any Event, Is Not Satisfied .......... 13

C. The Complaint Does Not Plead Any Plausible Claim Against Defendant Patterson .......... 15

1. Count I Does Not Identify Any Adverse Action Taken by Patterson .......... 17

2. Count II Does Not Allege That Patterson Personally Retaliated Against Plaintiff .......... 18

3. Count III Does Not Identify Any Misrepresentation by Patterson .......... 19

III. CONCLUSION .......... 19

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .......................4, 17
*Bozeman v. Per-Se Techs., Inc.*,
456 F. Supp. 2d 1282, 1357 (N.D. Ga. 2006) ............................................. 11, 15
*Brady v. Calyon Securities (USA) Inc*.,
406 F. Supp. 2d 307, 318 (S.D.N.Y. 2005) ..................................................6
*Connelly v. Lane Constr. Corp.*,
809 F.3d 780, 787 (3d Cir. 2016) ..................................................4
*Corbin v. Bucks Cty.*,
703 F. Supp. 3d 527, 533 (E.D. Pa. 2023)............................................. 16, 17, 18
*Heller v. CACL Federal Credit Union*,
775 F. Supp. 839 (E.D. Pa. 1991)..................................................9
*Evancho v. Fisher*,
423 F.3d 347, 353–54 (3d Cir. 2005) ..................................................16
*Fleszar v. United States Department of Labor*,
598 F.3d 912, 915 (7th Cir. 2010) ..................................................6
*Ford-Greene v. NHS, Inc.*,
106 F. Supp. 3d 590, 606 (E.D. Pa. 2015)..................................................13
*Garrett v. Wexford Health*,
938 F.3d 69, 93 (3d Cir. 2019) ..................................................16
*Gibney v. Evolution Marketing Research, LLC*,
25 F. Supp. 3d 741, 748 (E.D. Pa. 2014)..................................................5
*Glus v. G. C. Murphy Co.*,
562 F.2d 880, 888 (3d Cir. 1977) ..................................................14
*Grayson v. Mayview State Hosp.*,
293 F.3d 103, 108 (3d Cir. 2002) ..................................................10
*Jaludi v. Citigroup & Co.*,
57 F.4th 148, 152 (3d Cir. 2023) ..................................................11
*Jones v. Southpeak Interactive Corp. of Delaware*,
777 F.3d 658 (4th Cir. 2015) ............................................................ 11, 12
*Lawson v. FMR LLC*,
571 U.S. 429, 453, 134 S. Ct. 1158, 1173 (2014) ......................................... 1, 5, 7
*Pa. ex rel. Zimmerman v. Pepsico, Inc.*,
836 F.2d 173, 181 (3d Cir. 1988) ..................................................4
*Phillips v. County of Allegheny*,
515 F.3d 224, 236 (3d Cir. 2008) ..................................................10

*Reyher v. Thornton*,
262 F. Supp. 3d 209, 217 (E.D. Pa. 2017) .................... 5, 6, 8
*Santiago v. Warminster Twp.*,
629 F.3d 121, 125 (3d Cir. 2010) .................... 16
*Sheridan v. E.I. Dupont de Nemours & Co.*,
100 F.3d 1061, 1077 (3d Cir. 1996) .................... 13
*Wiest v. Lynch*,
710 F.3d 121, 130 (3d Cir. 2013) .................... 7, 8, 9, 18
*Wiest v. Tyco Elecs. Corp.*,
812 F.3d 319, 328–30 (3d Cir. 2016) .................... 8

**Statutes**

18 USC § 1514A(b)(2)(D) .................... 15
18 USCS § 1514A .................... 3, 4, 5, 6, 7, 14
29 CFR 1980.104 .................... 11
29 CFR 1980.114 (2025) .................... 10

**Other Authorities**

*In the Matter of: PHILIP KRISE, Complainant, vs. MANAGEMENT & TRAINING CORPORATION, Respondent*, 2011 DOLSOX LEXIS 48, CASE NO.: 2011-SOX-00025 .................... 9

## I. INTRODUCTION

Plaintiff's Brief in Opposition to Defendants' Partial Motion to Dismiss Plaintiff's Complaint (the "Opposition") (ECF No. 11) confirms what Defendants' opening brief (ECF No. 9) demonstrated: three of Plaintiff's theories fail as a matter of law and cannot be saved by the gloss of briefing. First, the Opposition does not dispute that Defendant Horizon Federal Credit Union ("Horizon") is not a publicly traded company, has no securities registered under Section 12 of the Securities Exchange Act of 1934, and files no reports under Section 15(d). Plaintiff instead stakes Count II on the conclusory assertion that Horizon is a "contractor" of national credit reporting agencies. That theory stretches *Lawson v. FMR LLC*, 571 U.S. 429, 453, 134 S. Ct. 1158, 1173 (2014), past its breaking point and, in any event, is untethered to any protected activity that Section 1514A recognizes. Plaintiff relies on Horizon's alleged commercial relationships with publicly traded companies and asserts that Horizon's alleged compliance failures could affect those companies and, "by extension," their shareholders. That attenuated theory does not satisfy SOX: specifically, a private employer does not become subject to SOX merely because it does business with a public company. Instead, the alleged whistleblowing must relate to the private employer's performance of its role as a contractor for the public company and to the fraud or securities violations identified in the statute.

Second, Plaintiff did not exhaust her SOX claims against either Defendant Justin Howard or Defendant Michael Patterson. Plaintiff concedes that her OSHA complaint, as written and as amended *while she was represented by her present counsel*, named only Horizon as a respondent and never mentioned either Howard or Patterson. The vague administrative reference to "multiple executive level" employees did not notify OSHA or either individual that Plaintiff sought to impose personal liability upon them. And Plaintiff's effort to import a Title VII exception designed for unnamed employer entities cannot cure that failure either.

Third, the Opposition confirms that Plaintiff's claims against Patterson rest on his position, his alleged responsibility for human resources, and speculation about what discovery might reveal. The Opposition does not identify a single paragraph of the Complaint alleging that Patterson *personally* did anything. It asks the Court to infer his liability from his job title and to let discovery supply the rest. *Twombly* and *Iqbal* forbid exactly that. A complaint must plead facts supporting a plausible claim before discovery. Even accepting the allegation that Plaintiff reported concerns to Patterson, that establishes neither that Patterson took any adverse action nor that he made a misrepresentation upon which Plaintiff relied.

For the reasons below and in Defendants' opening brief, the Court should dismiss Count II in its entirety and all claims against Patterson with prejudice.

## II. <u>LEGAL ARGUMENT</u>

### A. Horizon Is Not A Covered Entity Under SOX, and Count II Fails as to All Defendants

#### 1. The Opposition Concedes Horizon is Not a Public Company and Relies Entirely on a Conclusory "Contractor" Theory

Section 806 of the Sarbanes-Oxley Act applies to a company with securities registered under Section 12 of the Securities Exchange Act, a company required to file reports under Section 15(d), a subsidiary or affiliate whose financial information is included in such a company's consolidated financial statements, or a nationally recognized statistical rating organization. Its prohibition also reaches an officer, employee, contractor, subcontractor, or agent of such a company or rating organization. 18 USCS § 1514A.

Plaintiff does not contend that Horizon falls into any of the first three categories. (ECF No. 11 at 13 ("That Horizon is not publicly traded is not dispositive.").) Count II therefore survives only if the Complaint plausibly pleads that Horizon is a "contractor" of a covered public company *and* that Plaintiff's whistleblowing is the kind of activity the contractor provision protects. It does neither.

The sole coverage allegation is that Horizon "is believed and averred to operate as a contractor" for Experian plc, TransUnion LLC, Equifax, Inc., and ChexSystems, Inc. (ECF No. 1, ¶ 156.) That is a legal conclusion pleaded on information and belief, and it is not entitled to the presumption of truth. *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1950 (2009); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The Complaint does not identify any contract, does not describe any service Horizon performs for those entities, nor does it allege that any of them is itself an issuer with Section 12 securities or Section 15(d) reporting obligations. To the contrary, the Complaint's own descriptions undercut coverage: Experian is alleged to trade on the London Stock Exchange, and ChexSystems is alleged merely to be "owned by a subsidiary" of a public company. (ECF No. 1, ¶¶ 156.a, 156.d.) A contractor must be a contractor "of such company," 18 U.S.C. § 1514A(a), and the Complaint does not plead that relationship as to any qualifying issuer.[1]

The Supreme Court rejected the premise that "contractor" encompasses every party having a transitory or ordinary commercial relationship with a public company. If furnishing credit data to a bureau made a lender a SOX contractor, every bank, credit union, auto dealer, and landlord in the country that reports to a credit bureau would be subject to §1514A. Nothing in *Lawson* supports that result. The relevant

[1] Plaintiff now argues that the credit bureaus "rely on financial institutions—such as Horizon—to accurately report credit and other financial information to them." (ECF No. 11 at 11–12.) That allegation appears nowhere in the Complaint, and "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pa. ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). But even taken at face value, it describes Horizon as a *customer* and *data furnisher* to the credit bureaus, not as an entity that *performs work on a public company's behalf* as required by SOX.

limiting principle is whether the employee's whistleblowing concerns the private employer's fulfillment of its role as a contractor for the public company, rather than conduct undertaken in another capacity. *Lawson*, 571 U.S. at 453. That limitation is essential here. Plaintiff alleges misconduct concerning Horizon's own financial status, reporting obligations to its members and regulators, lending practices, governance, and disclosure of adverse credit decisions. Plaintiff does *not* plead facts showing that Horizon performed a defined function for a public company in which Horizon could detect, facilitate, or report fraud affecting that company's investors. Nor does she identify a material misrepresentation by a public company or by Horizon on a public company's behalf. Her theory instead is that Horizon's internal regulatory problems could affect companies with which Horizon does business and thereby affect their shareholders.

Reported decisions in this circuit reject that expansion of SOX. In *Gibney v. Evolution Marketing Research, LLC*, the court held that SOX does not cover every action by a private contractor that has an attenuated negative effect on a public company's revenue and, by extension, its shareholders. 25 F. Supp. 3d 741, 748 (E.D. Pa. 2014). More importantly, "in enacting SOX Congress was <u>specifically</u> concerned with preventing shareholder fraud either by the public company itself or *through* its contractors." *Id*. at 747 (emphasis in original). *Reyher v. Thornton* applied the same principle. A private-company employee cannot invoke §1514A

merely because the employer contracts with public companies on matters unrelated to the alleged whistleblowing. 262 F. Supp. 3d 209, 217 (E.D. Pa. 2017).

Other circuits follow this as well. In *Fleszar v. United States Department of Labor*, the court rejected the proposition that every entity having *any* contract with a securities issuer is covered under SOX. The court reasoned that the statutory terms contractor, subcontractor, or agent refer in context to entities participating in the covered issuer's activities. 598 F.3d 912, 915 (7th Cir. 2010). A limited business relationship with a public company therefore does not transform an otherwise private employer into a covered employer for every employment dispute. The same distinction appears in *Brady v. Calyon Securities (USA) Inc*. There, the court rejected an attempt to impose §1514A based on a private employer's alleged work as an agent for public companies in limited financial contexts. The statute does not supply general whistle-blower protection to employees of every private employer whose business sometimes involves acting in a public company's interests. 406 F. Supp. 2d 307, 318 (S.D.N.Y. 2005). The relationship alleged here is no stronger. Plaintiff's reports concerned *Horizon's conduct* as a credit union, not misconduct arising from Horizon's performance of a particular contractor function for a public issuer.

Plaintiff also emphasizes that she need not prove an actual securities violation. That misses the issue. The reasonable-belief standard addresses protected activity; it does not eliminate the separate statutory requirement that the defendant fall within

§1514A's coverage. The Third Circuit's reasonable-belief standard requires a subjective and objectively reasonable belief that the reported conduct violated one of §1514A's enumerated provisions. *Wiest v. Lynch*, 710 F.3d 121, 130 (3d Cir. 2013). It does not transform every private company that purchases services from, sells services to, or exchanges information with a public company into a SOX-covered employer.

### 2. *Lawson* Protects Contractor Employees Who Report Fraud on the Public Company's Shareholders, Which Plaintiff Never Reported

Plaintiff reads *Lawson* as holding that any entity that does business with a public company is covered. (ECF No. 11 at 9–11.) Lawson held something far narrower: that §1514A protects the employees of a public company's contractors, in a case where the plaintiffs worked for the investment advisers that managed public mutual funds and reported fraud relating to those funds. 571 U.S. at 432–33, 440–41. The *Lawson* Court's concern was that contractor employees are often best positioned to detect "a scheme to defraud the public company's investors," *id.* at 444 (quoted in ECF No. 11 at 10), and it emphasized that Congress sought to protect contractor employees who suspected fraud involving the public companies with which they worked. *Id.* at 449, 453. The whistleblowing must therefore relate to the contractor's fulfillment of its role for the public company, and to fraud on that company's shareholders. That limiting principle is dispositive here.

Plaintiff's reports, as pleaded, concerned *Horizon's* own alleged consumer-lending and data-security compliance: lapsed loan applications under CFPB regulations, call-recording disclosures, PCI DSS certification, and the Equal Credit Opportunity Act, the SAFE Act, the Home Mortgage Disclosure Act, and the Gramm-Leach-Bliley Act Safeguards Rule. (ECF No. 1, ¶¶ 43, 70–79, 84–90, 112.) None of those laws are among the categories §1514A(a)(1) enumerates: mail, wire, bank, or securities fraud, an SEC rule or regulation, or a federal law "relating to fraud against shareholders." Although the Third Circuit does not require a whistleblower to cite a specific statute, it does require that the employee subjectively believe, and reasonably so, that the reported conduct violates one of those enumerated categories. *Lynch*, 710 F.3d at 132–34; *see Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 328–30 (3d Cir. 2016). The Opposition's footnoted suggestion that the GLBA is "administered in part by the [SEC]" (ECF No. 11 at 14 n.4) does not help: Plaintiff's own Complaint pleads that the relevant GLBA rule is the FTC's Safeguards Rule (ECF No. 1, ¶ 112.d), and the SEC has no regulatory role over a federal credit union. Courts applying *Lawson* have likewise explained that its holding protects private-contractor employees whose alleged reporting concerns the contractor's work for the covered public entity. *Reyher*, 262 F. Supp. at 216.

The only allegation linking Plaintiff's reports to any public company is that she "reasonably believed" Horizon's regulatory violations "would have a negative financial impact on the public companies it contracts for, and by extension, their shareholders." (ECF No. 1, ¶ 160.) That is a speculative chain of downstream consequences, not a reasonable belief of shareholder fraud. *Wiest v. Lynch* does not relieve a plaintiff of the obligation to plead facts that make a belief objectively reasonable; it holds the opposite. 710 F.3d at 132–34. Plaintiff does not allege that she ever told anyone that Experian, TransUnion, Equifax, or ChexSystems, or their shareholders, were being defrauded. Her reports were about Horizon, to Horizon and to consumer-protection regulators, and they are not SOX-protected activity.

### 3. Plaintiff's Remaining Arguments Do Not Save Count II

Plaintiff's attacks on *Heller v. CACL Federal Credit Union*, 775 F. Supp. 839 (E.D. Pa. 1991), and the Department of Labor's *Krise* decision miss the point. (ECF No. 11 at 14–15.) Defendants cited *Heller* for the settled proposition that federal credit unions are member-owned cooperatives regulated under the Federal Credit Union Act by the NCUA, *id.* at 840, not by the SEC, which explains why Horizon has no Exchange Act registration or reporting obligation. That regulatory structure did not change in 2002. Notably, OSHA itself dismissed Plaintiff's complaint, and specifically found that Horizon was not covered under SOX, after a 233-day investigation. (ECF No. 1, ¶¶ 18–19, Ex. E.)

Finally, Defendants do not argue that only public companies can be liable; they argue that Plaintiff has not pleaded facts placing Horizon within any covered category, including the contractor category as *Lawson* construes it. Finally, Plaintiff concedes that the SOX claims against Howard and Patterson rise or fall with Horizon's coverage, because their liability depends on their status as officers of Horizon. (ECF No. 11 at 15 n.6; ECF No. 1, ¶ 158.) Because Horizon is not covered, Count II fails against all Defendants. And because Plaintiff cannot plead around Horizon's status as a non-public federal credit union, amendment would be futile. *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

### B. Plaintiff Failed to Exhaust Her Mandatory Administrative Remedies as to Defendants Howard and Patterson

#### 1. SOX Requires Plaintiff to Present Her Claim Against Each Respondent to OSHA Before Suing That Respondent

SOX requires the employee to file an administrative complaint before bringing a federal action. The governing regulation permits a federal action if the Secretary has not issued a final decision within 180 days after the filing of that complaint, absent bad-faith delay by the complainant. 29 CFR 1980.114 (2025). The administrative complaint must therefore give the agency an opportunity to address the claim that later reaches federal court. Plaintiff agrees that SOX's "kick-out" provision "implicitly requires exhaustion." (ECF No. 11 at 16 (quoting *Jaludi v.*

*Citigroup & Co.*, 57 F.4th 148, 152 (3d Cir. 2023)).).

Plaintiff's argument that "[n]either the SOX nor the Regulations define exhaustion of remedies relevant to specific claims or people" (ECF No. 11 at 17) ignores how the administrative process works. OSHA notifies the named respondent of the complaint, gives that respondent an opportunity to submit a written response and meet with the investigator, and issues findings and a preliminary order against that respondent. 29 C.F.R. § 1980.104. A person who is never named cannot participate, cannot conciliate, and cannot be the subject of a preliminary order. Courts consistently hold that a SOX plaintiff may not sue an individual who was not identified in the OSHA complaint as a person alleged to have retaliated. *Bozeman v. Per-Se Techs., Inc.*, 456 F. Supp. 2d 1282, 1357 (N.D. Ga. 2006). In *Bozeman*, that plaintiff's OSHA complaint named only the corporate employer and as such the court held that the plaintiff failed to exhaust SOX claims against the individual defendants, notwithstanding the argument that the administrative complaint identified them as actors and gave them notice. *Id.* The same result follows here. Even the decision on which Plaintiff relies, *Jones v. Southpeak Interactive Corp. of Delaware, 777 F.3d 658 (4th Cir. 2015)*, found exhaustion only because the individual defendants were identified by name in the body of the OSHA complaint as persons alleged to have violated the Act. *Id.* at 668–69.

### 2. Plaintiff's OSHA Complaints Named Only Horizon and Never Mentioned Howard or Patterson

Under any of these standards, Plaintiff did not exhaust. Both the original and amended OSHA complaints list a single respondent: "Horizon Federal Credit Union." (ECF No. 1, Exs. A, C.) OSHA's acknowledgment letter confirms that the complaint was filed "against Horizon Federal Credit Union (Respondent)," and that OSHA notified only that respondent. (ECF No. 1, Ex. A.) Plaintiff was represented by her current counsel when she filed both of her OSHA filings which identified Horizon as the sole respondent. (ECF No. 1, Exs. A, C.) Neither of Plaintiff's OSHA filings named Howard or Patterson as respondents, identified either by name in the complaint particulars or asked OSHA to determine whether either individual was personally liable for retaliation. OSHA's decision likewise identifies Horizon as the sole respondent and describes the allegations as claims that "Respondent" eliminated Plaintiff's position, did not select her for another position, and terminated her employment.

Plaintiff's only textual hook is the investigator's sentence that she "notified multiple executive level Respondents via email of potential SOX violations." (ECF No. 11 at 20 (quoting ECF No. 1, Ex. A).) That phrase identifies the recipients of Plaintiff's reports, not the persons who allegedly retaliated, and it names no one. It is a far cry from *Jones*, where the individuals were specifically named and charged in the body of the complaint, 777 F.3d at 668–69, and from the Title VII cases

Plaintiff cites, in which the unnamed defendant was "named in the body of the complaint." *Ford-Greene v. NHS, Inc.*, 106 F. Supp. 3d 590, 606 (E.D. Pa. 2015). A generic reference to unnamed "executive level" recipients of emails would not have told OSHA, Howard, or Patterson that either man faced personal liability. Indeed, under Plaintiff's reading, every Horizon executive who ever received one of her emails would be a proper individual defendant.

Plaintiff's suggestion that she "had no effective control" over the OSHA complaint (ECF No. 11 at 20) is contradicted by the record. Plaintiff was represented by her present counsel, who was her designated representative before OSHA. (ECF No. 1, Exs. A, C.) She submitted a chronology to the investigator on June 26, 2025, and then amended her complaint on July 31, 2025. (ECF No. 1, ¶¶ 15–16, Exs. B, C.) The amended complaint added a failure-to-hire allegation but still named only Horizon. (ECF No. 1, Ex. C.) The omission of Howard and Patterson was not an investigator's error that Plaintiff was powerless to correct; it was a choice.

### 3. Tite VII's "Commonality of Interest" Exception Does Not Apply, and, In Any Event, Is Not Satisfied

Plaintiff's Opposition relies principally on Title VII decisions and the expected scope of an administrative investigation but the Third Circuit's Title VII exception is a poor fit. Title VII does not impose individual liability on employees, *Sheridan v. E.I. Dupont de Nemours & Co.*, 100 F.3d 1061, 1077 (3d Cir. 1996), so the *Glus* line of cases addresses related entities, such as unions and affiliated

employers, whose interests are aligned with the named respondent. SOX, by contrast, exposes individual officers to personal liability. 18 U.S.C. § 1514A(a). But even under the Title VII authorities Plaintiff invokes, naming the proper respondent serves two concrete purposes: notice to the party charged and an opportunity to resolve the claim without litigation. *Glus v. G. C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977). The Third Circuit's exception for an unnamed party examines whether that party's role was reasonably ascertainable, whether the named and unnamed parties had sufficiently similar interests for conciliation, whether the omission caused prejudice, and whether the unnamed party represented that the complainant should deal through the named party. *Id*. at 884.

Those considerations do not save Plaintiff's claims. Howard and Patterson were known to Plaintiff before the OSHA filings; indeed, she now alleges that they were Horizon executives responsible for employment decisions. Yet she named only Horizon as the respondent. The administrative proceeding addressed Horizon's liability, not whether Howard or Patterson personally knew of protected activity, personally took adverse action, or personally retaliated against Plaintiff.

The phrase "multiple executive level" employees does not cure the defect. Plaintiff's OSHA complaint stated only that she notified multiple executive level respondents of potential violations. Notification of an executive is not an administrative charge against that executive. It does not identify Howard or

Patterson, allege the conduct for which each was personally responsible, or place either individual on notice that Plaintiff sought relief against him personally.

Plaintiff also argues that Horizon's administrative response discussed Howard and cited a whistleblower policy allegedly administered by Patterson. But an employer's defense of its own conduct does not amend an OSHA complaint to add new respondents. Nor does a policy reference notify Patterson that he faces personal liability. Under *Bozeman*, even identifying individuals as actors is not equivalent to exhausting claims against them. *Bozeman*, 456 F. Supp. 2d at 1357.

Finally, this defect cannot be cured. A SOX complaint must be filed with OSHA within 180 days of the violation. 18 U.S.C. § 1514A(b)(2)(D). Plaintiff was terminated on June 11, 2025 (ECF No. 1, ¶ 139), and the time to present any claim against Howard or Patterson expired long ago. Count II should be dismissed with prejudice as to both individual Defendants.

### C. The Complaint Does Not Plead Any Plausible Claim Against Defendant Patterson

Plaintiff filed a 183-paragraph Complaint supported by twenty-seven exhibits, after a full OSHA investigation in which she submitted a detailed chronology, a sworn statement, a rebuttal, and several hundred documents. (ECF No. 1, ¶¶ 15–17 & n.1.) That record describes Howard's conduct in granular detail, yet it says nothing about any act by Patterson. Plaintiff does not identify any additional fact she could plead, and her Opposition's request to proceed on inference and discovery confirms

that none exists. The Opposition identifies no well-pleaded facts showing that Patterson personally committed the conduct underlying any count. The Complaint only alleges that Patterson served as Horizon's Chief Branding Officer, managed human-resources functions, and "collaborated" with Howard regarding Plaintiff's employment. It then alleges, on information and belief, that Howard and Patterson were the executives responsible for making and implementing personnel actions. Those allegations identify Patterson's position and recite a conclusion; they do not identify what he did.

The Third Circuit has rejected pleadings that use naked assertions of direction or acquiescence without factual enhancement. *Santiago v. Warminster Twp.*, 629 F.3d 121, 125 (3d Cir. 2010). Although Rule 8 permits allegations that defendants acted together, it still requires facts allowing the Court to infer that the particular defendant is liable. *Corbin v. Bucks Cty.*, 703 F. Supp. 3d 527, 533 (E.D. Pa. 2023). Where a complaint names multiple defendants, it must allege what each did. *Garrett v. Wexford Health*, 938 F.3d 69, 93 (3d Cir. 2019). The Third Circuit has repeatedly rejected allegations that ascribe liability to a senior official based on his position rather than his conduct. *Santiago*, 629 F.3d at 130–31; *Evancho v. Fisher*, 423 F.3d 347, 353–54 (3d Cir. 2005). Plaintiff's allegations do not meet that standard.

#### 1. Count I Does Not Identify Any Adverse Action Taken by Patterson

Plaintiff alleges collectively that "Defendants" knew of her protected activity and took unfavorable personnel action against her. The Complaint's only allegations tying Patterson to any personnel action are the conclusory "collaborated" and information-and-belief allegations in ¶¶ 9 and 154, which are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678–79; *Evancho*, 423 F.3d at 353–54. Plaintiff's allegation that Howard and Patterson "may be held individually liable" as officers (ECF No. 1, ¶ 158) is a legal conclusion that, at most, describes a theory of status-based liability. The Complaint does not identify any decision Patterson made, any instruction he issued, any communication he sent, or any personnel action he implemented.

The Opposition does not fill that gap. It argues that Plaintiff reported regulatory concerns to Horizon's "CBO/HR," that Patterson attended at least one meeting, and that he had responsibility for human resources and Horizon's whistleblower policy. At most, those assertions concern notice and Patterson's corporate role. They do not establish that Patterson took, directed, or contributed to an adverse action.

Plaintiff openly asks the Court to infer a "more explicit role" because Patterson managed human resources and suggests that the details can be developed through discovery. That is speculation, not a pleaded fact. A defendant's senior

position does not itself support a reasonable inference that he committed every act attributed collectively to the organization. The Third Circuit has rejected efforts to infer personal involvement merely from a defendant's position at the head of an organization. *Evancho*, 423 F.3d at 353.

Accordingly, Count I fails against Patterson.

#### 2. Count II Does Not Allege That Patterson Personally Retaliated Against Plaintiff

Count II has the same defect. A SOX retaliation claim requires protected activity, the employer's knowledge or suspicion of that activity, an adverse action, and circumstances supporting an inference that the protected activity contributed to the adverse action. *Lynch*, 710 F.3d at 132–34. The Complaint does not plead what protected activity Patterson knew about, when he acquired that knowledge, what adverse action he took, or how any act by him contributed to Plaintiff's termination.

Patterson's title cannot supply those missing facts. Even if §1514A can reach an officer of a covered entity, officer status identifies only a potential statutory relationship; it does not establish that the officer engaged in retaliation. The Complaint's collective reference to "Defendants" does not plausibly allege Patterson's participation.

Count II therefore fails against Patterson for three independent reasons: Horizon is not covered, Plaintiff did not exhaust a claim against Patterson, and the Complaint does not plead Patterson's own retaliatory conduct.

### 3. Count III Does Not Identify Any Misrepresentation by Patterson

Count III is even more deficient. The Complaint attributes the alleged representations concerning whistleblower protection specifically to Howard and otherwise relies on collective references to "Defendants" and Horizon's whistleblower policy. It does not identify a statement by Patterson, its substance, when or where he made it, or any action Plaintiff took in reliance upon it.

Plaintiff's Opposition points to Patterson's alleged responsibility for administering the policy and his supposed failure to protect Plaintiff. But responsibility for a corporate policy is not a representation by Patterson. Nor does an alleged failure to enforce that policy identify any false statement he made to Plaintiff. Because Count III does not plead conduct by Patterson supporting the claim asserted, it should be dismissed against him.

## III. CONCLUSION

For the foregoing reasons, and those set forth in Defendants' opening brief, Defendants respectfully request that the Court grant their Partial Motion to Dismiss and enter an order (1) dismissing Count II of the Complaint in its entirety, as to all Defendants, with prejudice; (2) in the alternative, dismissing Count II as to Defendants Howard and Patterson, with prejudice, for failure to exhaust administrative remedies; and (3) dismissing all claims against Defendant Patterson, with prejudice, together with such other relief as the Court deems just and proper.

Respectfully submitted,

**JACKSON LEWIS P.C.**

***/s/ Jessica L. Mazzeo***
Timothy M. McCarthy, Esq. (PA 319308)
Jessica L. Mazzeo (PA No. 331227)
Three Parkway, Suite 1350
1601 Cherry Street
Philadelphia, PA 19102
T: (267) 319- 7802
timothy.mccarthy@jacksonlewis.com
jessica.mazzeo@jacksonlewis.com
*Attorneys for Defendants*

Dated: November 18, 2026

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)

I, Jessica L. Mazzeo, Esq., do hereby certify that in compliance with Local Rule of Civil Procedure 7.8(b), Defendants' Reply Memorandum of Law in Further Support of Their Partial Motion for Summary Judgment exceeds fifteen (15) pages but contains no more than 5,000 words. Defendants' Reply Memorandum, including footnotes, contains 4,585 words.

Respectfully submitted,
**JACKSON LEWIS P.C.**

***/s/ Jessica L. Mazzeo***
Timothy M. McCarthy, Esq. (PA 319308)
Jessica L. Mazzeo (PA No. 331227)
Three Parkway, Suite 1350
1601 Cherry Street
Philadelphia, PA 19102
T: (267) 319- 7802
timothy.mccarthy@jacksonlewis.com
jessica.mazzeo@jacksonlewis.com
*Attorneys for Defendants*

Dated: November 18, 2026

## CERTIFICATE OF SERVICE

I, Jessica L. Mazzeo, Esq., do hereby certify that on this 18th day of November, 2026, I caused a true and correct copy of the foregoing Defendants' Reply Memorandum of Law in Further Support of Their Partial Motion to Dismiss, and accompany Certification, to be served via this Court's electronic filing system ECF upon all counsel of record.

***/s/ Jessica L. Mazzeo***
Jessica L. Mazzeo, Esq.

4909-8689-4306, v. 2